OPINION OF THE COURT
Martin B. Stecher, J.
Although not so denominated, this appears to be a motion for summary judgment in a declaratory judgment action made prior to the joinder of issue. The defendants, for their part, do not seem to oppose such procedure feeling, apparently, as stated by their attorney, that “the issues in this motion are solely legal issues. The legal issue goes to the rights of the tenant under his lease and under Section 226B of the Real Properties [sic] Law to assign his lease without the landlord’s permission where the landlord acknowledges that his [sic presumably ‘he is’] withholding permission in an arbitrary fashion.” If the parties desire to approach the issues in summary fashion prior to joinder of issue (cf. CPLR 3212, subd [a]) and, if there are no issues of fact, there is no reason for the court not to declare the rights of the parties as demanded in the *937 complaint (CPLR 3211, subd [c]). The parties should be permitted to chart their own course of litigation. (Cf. Cullen v Naples, 31 NY2d 818.)
From the undisputed facts of this case, it appears that the plaintiff Grayshaw is a lessee of an apartment under the terms of a renewed lease which will not expire until some time in 1982. He has chosen to assign his lease to the plaintiff Dorn. Under the terms of the printed provisions of the lease, a standard Real Estate Board form, the tenant agrees that “it shall not assign * * * this agreement, nor underlet, or suffer or permit the premises or any part thereof to be used by others, without the prior, written consent of the landlord in each instance.” There is nothing in this language enjoining the landlord from withholding its consent unreasonably.
Annexed to the lease and signed by the parties are two additional relevant documents, one entitled “Sublease Clause Rider” and the other “Rider to Lease”. The “Sublease Clause Rider” provides that “[t]he Landlord agrees to not unreasonably withhold approval of said subletting. Before this clause shall be binding on the Landlord, the Landlord shall have the right to issue a release to the Tenant and take back the apartment.” The “Rider to Lease” provides that the parties agree that “not withstanding anything to the contrary contained in the sublet and assignment clauses of this letter [sic] tenant’s right to sublet the premises shall be governed by Section 226-b of the Real Property Law of the State of New York”. In this rider, the landlord “reserves the right to reject any proposed subtenant and take back the apartment and release the tenant.” Clearly then the lease creates no right to assign or sublet “without landlord’s prior, written consent”, and the landlord’s consent is not subject to a test of reasonableness.
By certified mail Grayshaw notified the defendants, on October 22, 1980, of his intention to assign the premises to Dorn, offering to provide “additional information to determine if rejection of such request shall be unreasonable. I await your notice of consent or rejection.”[1] In response, *938 the defendant wrote “As we indicated in our letter to you of October 10,1980, we must reiterate our position wherein we rejected your subtenant and released you from your lease effective 11/30/80. If you desire to test 226-b in a court of law, we are certainly prepared to meet you in court. We are prepared to offer your prospective subtenant the right to enter into a new lease effective December 1, 1980 at the approved Rent Stabilization increase.” Grayshaw responded on November 13, 1980 “Please be advised that I have assigned the remaining term of my lease to Stephen J. Dorn, commencing December 1, 1980.” Enclosed was Dorn’s check for the December rent.
From the foregoing, the following inferences appear beyond doubt: Grayshaw in accordance with the statute (Real Property Law, § 226-b) sought the consent of the defendants to assign the lease to Dorn; the consent was unreasonably withheld; and Grayshaw, without the landlord’s consent, has sought to assign his lease to Dorn. The landlord, by express acknowledgment and inferentially by undertaking to offer a new lease to Dorn, has acknowledged that its refusal to approve the assignment is unreasonable.
The plaintiffs appear to rely on Kruger v Page Mgt. Co. (105 Misc 2d 14) which holds that where a landlord unreasonably withholds its consent to subletting or assignment the tenant has the option of withdrawing from the lease or assigning the lease or subletting the premises despite the absence of consent. I do not find that the facts of that case are in any material way distinguishable from the case at bar.
I do not consider relevant cases interpreting contractual clauses in which the landlord agrees not to withhold consent unreasonably.[2] Where parties have reached agreement on how to deal with the ever vexatious problem of subletting and assignment, the court should attempt to enforce their agreement as made.
Here, we deal with the interpretation, not of a contract *939 where the intention of the parties is sought by the court, but a statute where the intention of the Legislature is sought by the court. This statute (Real Property Law, § 226-b) is less than clear and it is for that reason we must resort to rules of statutory interpretation. It is our obligation “not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.” (Cabell v Markham, 148 F2d 737, 739; to the same effect, Federal Trade Comm. v Tuttle, 244 F2d 605, 615; Federal Deposit Ins. Corp. v Tremaine, 133 F2d 827, 830; Matter of Petterson v Daystrom Corp., 17 NY2d 32, 38; Essenfeld Bros. v Hostetter, 14 NY2d 47, 52.) “It is fundamental that a statute must be read with the legislative goal in mind, so that controversies generated by ambiguities or gaps in the law may be resolved in accordance with the legislative scheme * * * Courts are obligated to apply a statute to the extent possible to accomplish this purpose and to avoid incongruous, unreasonable or unjust results” (Matter of Pell v Coveney, 37 NY2d 494, 496; to same effect, Matter of 89 Christopher v Joy, 44 AD2d 417, 422-423). The statute (Real Property Law, § 226-b) is clearly remedial and its purpose is to deal with the potential for injustice inherent in a relationship wherein the landlord retains the sole and arbitrary power to reject a prospective successor to the tenant and at the same time hold a tenant to the terms of his lease. It is apparent from the history of the statute, as well as from a parallel statute (Real Property Law, § 236) that it was enacted to permit a tenant who no longer had use for an apartment to obtain reasonable relief by either finding a suitable subtenant or assignee or by procuring his own release from further obligation.
When the statute (Real Property Law, § 226-b) was first enacted (L 1975, ch 146) it provided that a landlord’s consent to subletting “shall not be unreasonably withheld. If the landlord unreasonably withholds consent for such sublease, he must agree to release the tenant from the lease or accept the sublessee.” This gave the tenant but two choices: to either have his sublessee accepted or be released from the lease. Arguably, it gave him no option to remain. *940 In the same session, the Legislature bridged this gap (L 1975, ch 548) by amending the statute to provide that the landlord must release a tenant from the lease upon the request of the tenant. (The following year, the Legislature provided that proposed lease assignments be dealt with in the same fashion as subleases [L 1976, ch 198].)
The evil which the Legislature sought to remedy was not that tenants were disabled by their leases from entering into the business of trading in apartments. The problem addressed was the arbitrary potential for abuse discussed above. Had the Legislature intended that landlords be required to consent to subleases and assignments, it need merely have said just that and nothing more. The Legislature, however, went further and provided its own remedy for the unreasonable withholding of consent: It gave the tenant the option to remain or to get out. It was never the intention of the Legislature to enable tenants to trade in leases despite their contracts to the contrary.
Unreasonable as he was, the landlord had the arbitrary right to consent or withhold consent to the assignment. The consequences of its unreasonableness is that Grayshaw may stay or Grayshaw may leave, but Dorn has no rights in the premises (Lexann Realty Co. v Deitchman, NYLJ, Dec. 18, 1980, p 11, col 3, supra; Pacer Realty Assoc. v Lasky, App Term, First Dept., Jan. 22, 1981).
It is asserted that for a period of time both Grayshaw and Dorn were excluded from the apartment by the landlord. To that extent a separate cause of action for damages may exist but it is not before me. As indicated above, however, the landlord may not exclude Grayshaw because of his attempted rogatory assignment.
Settle judgment declaring the rights of the parties in accordance with the foregoing.

. It appears that Grayshaw had previously submitted another subtenant or assignee for consideration who had been rejected by letter dated October 10, 1980. Regrettably, this correspondence has not been made available to the court.

. Obviously, the Appellate Term, First Department, is of a different view, concluding as it has that the statute was intended, among other objectives, to limit a tenant’s contractual right to sublet the premises (Lexann Realty Co. v Deitchman, NYLJ, Dec. 18, 1980, p 11, col 3).