OPINION OF THE COURT
Charles S. Whitman, Jr., J.
This case presents a factual pattern not hitherto considered by courts which have interpreted section 226-b of the Real Property Law, the recently enacted statute relating to the tenant’s right to sublet or assign his lease.
In August of 1981,1 find that the tenant Platt violated a substantial obligation of his tenancy by permitting Miss Catley-Carlson to occupy his apartment without prior approval by the landlord. The occupancy may have been accompanied by a sublease, though none was offered in evidence.
All parties appear to agree that landlord discovered the fact of the new occupancy sometime in September and there was a somewhat acrimonious confrontation between landlord and subtenant in the apartment. Subsequent to this confrontation, Platt sent a letter dated September 16, 1981 requesting permission to transfer his previous sublease (to a Mr. Hutton) to Miss Catley-Carlson. Landlord now takes the position that this letter did not comply with section 226-b of the Real Property Law because the letter did not contain the home address of the proposed subtenant (and because a subletting rather than an assignment was requested).
*569 With respect to the subtenant’s home address, it is proper to point out that landlord, under section 226-b of the Real Property Law, had 10 days to ask for this information and any further information which would enable the landlord to determine if the rejection of tenant’s request would be unreasonable.
Instead of asking for more information, the landlord, in righteous (if improvident) indignation, wrote tenant on September 25, 1981 rejecting the request for consent to subletting stating that the rejection was due to tenant having put Miss Catley-Carlson into occupancy prior to the request (not due to any objection to Miss Catley-Carlson as a subtenant).
Thereupon, Platt assigned his leasehold to Miss Catley-Carlson. The instrument of assignment is misnamed a sublease but the transaction was, in fact, an assignment because it was for the entire remaining term of Platt’s lease. The reservation in the instrument of certain rights to Platt was not such as to prevent the transfer from being an assignment (see, inter alia, 1 Rasch, New York Landlord and Tenant [2d ed], §§ 183-184). The court is not unaware of the differences in relationships and obligations, inter sese, between landlord and Platt and Miss Catley-Carlson caused by the fact that the transfer was by assignment rather than by sublease, but such considerations are beyond the scope of this decision.
Landlord then served a notice to cure dated October 14, 1981, and a later notice of termination dated November 3~ 1981, and this holdover proceeding followed. I have no doubt that tenant Platt violated a substantial obligation of his lease in permitting the occupation of the apartment by Miss Catley-Carlson. However, the law allows for repentance. That is the purpose of the 10-day notice to cure. I find that tenant Platt’s assignment cured the illegal occupancy (and terminated the prior sublease to Miss CatleyCarlson, if there was one).
Further, I have no doubt that landlord’s rejection was unreasonable. In court, landlord’s attorney suggested possible objections to Miss Catley-Carlson as a tenant but those objections seem baseless to me and, more importantly, were not mentioned in landlord’s rejection letter.
*570 The case is complicated by the apparent lack of merit in the position taken by any of the parties. It is difficult to balance the equities when there are none.
The landlord’s posture is very severe. In Whitefriars v Rundle (Civ Ct Index No. L&T 100285, 1981), Judge Wright noted that the landlord had offered to accept, by novation, the subtenant as his own tenant. I suggested that such an offer be made in this case, but the suggestion was rejected, and I suspect that the imminence of conversion of the apartments to co-operative status may have influenced the landlord’s decision.
The tenant Platt has so far succeeded in trafficking for profit in a rent-stabilized apartment. This was certainly not the legislative intent.
As for Miss Catley-Carlson, she was, and still is, in default. At the court’s suggestion, she was called as a witness. As a stranger in our midst from Canada, she may or may not be merely an innocent observer of the incredible vagaries of rent control.
None of the cases cited in the briefs is of controlling influence here. The case of Claridge Gardens v Osorio (NYU, Dec. 23, 1981, p 7, col 1) was decided on the basis that there was inadequate proof that tenant had ever informed landlord of tenant’s intent to invoke his rights under section 226-b of the Real Property Law. Language to the effect that tenant had forfeited his right to sublet by reason of putting the subtenant in possession without prior consent of landlord is pure obiter dictum. In Whitefriars v Rundle (supra), it was properly held that tenant should have waited for 10 days to allow landlord to ask for further information. Here, such a wait would have been futile, for landlord rejected the request out of hand.
I hold, therefore, that tenant had the undoubted right to sublet or assign because landlord had unreasonably withheld his consent to the same (under Real Property Law, § 226-b) on the authority of Conrad v Third Sutton Realty Co. (81 AD2d 50) and Lexann Realty Co. v Deitchman (83 AD2d 540).
Final judgment for respondents.