## Joel Shapiro et al., Respondents, v Dwelling Managers, Inc., Appellant, et al., Defendant.

First Department, February 24, 1983

### APPEARANCES OF COUNSEL

*Jeffrey R. Metz* of counsel (*Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C.,* attorneys), for appellant.

*Milton Thurm* of counsel (*Greenhill, Speyer & Thurm,* attorneys), for respondents.

### OPINION OF THE COURT

SILVERMAN, J. (concurring). I would reverse the order appealed from and deny plaintiffs' motion.

The facts are sufficiently stated in the memoranda of Justices MILONAS and KASSAL.

Plaintiffs' motion, served with the summons and complaint, is essentially one for summary judgment asking for the full relief that the complaint asks; and the court granted that motion and relief and final judgment.

A motion for summary judgment cannot be made until after issue has been joined. (CPLR 3212, subd [a].) At the time this motion was made, issue had not been joined. Accordingly, it was improper to grant the motion.

If I were not reversing on this ground, I would reverse and deny the motion on the merits, giving plaintiffs tenants the option, if they wished, to be released from the lease pursuant to subdivision 1 of section 226-b of the Real Property Law.

The case again presents perplexing problems of the rights of the parties under that statute.

The statute provides in part:

"1. A tenant renting a residence in a dwelling having four or more residential units shall have the right to sublease or assign his premises, subject to the written consent of the landlord given in advance of the sublease or assignment. Such consent shall not be unreasonably withheld. If the landlord unreasonably withholds consent for such sublease or assignment, the landlord must release the tenant from the lease upon request of the tenant.

"2. * * * Within thirty days after the mailing of the request for consent, or of the additional information reasonably asked for by the landlord, whichever is later, the landlord shall send a notice to the sender thereof of his consent or, if he does not consent, his reasons therefore. Landlord's failure to send such a notice shall be deemed to be a consent to the proposed subletting or assignment. If the landlord consents, the premises may be sublet or assigned in accordance with the request, but the tenant thereunder, shall nevertheless remain liable for the performance of tenant's obligations under said lease." (Real Property Law, § 226-b.)

The precise issue in the present case is (where the lease contains a provision against sublet or assignment without landlord's consent and no provision that landlord will not unreasonably withhold his consent) whether (a) as tenants contend, a sublease or assignment is valid, notwithstanding the landlord's rejection, where the landlord has given written notice of his rejection and stated the reasons therefor, as required by subdivision 2 of the statute, but the court deems his refusal to be unreasonable; or (b) as landlord contends, such claimed unreasonableness only gives the prime tenant the right to be released from the obligations of the lease, which landlord is willing to do anyhow.

In two opinions the language of the majority of this court favors tenants' present position. (*Conrad v Third Sutton Realty Co.*, 81 AD2d 50; *Lexann Realty Co. v Deitchman*, 83 AD2d 540.) Both cases, however, are distinguishable on

the facts from the present case. In the *Conrad* case, the landlord did not state his reasons for the refusal to consent to the sublet, and thus, consent was deemed to have been made under subdivision 2 of section 226-b of the Real Property Law. In the *Lexann* case, the lease provided that the landlord's consent to sublet shall not be unreasonably withheld. Separate concurrences in each case rested precisely on the presence of those distinguishing facts. In the present case, unlike *Conrad,* the landlord did give his reasons for refusal to consent to the sublet, and unlike *Lexann,* the lease does not contain a provision that the landlord will not unreasonably withhold his consent.

In my view, a fair reading of the statute leads to these conclusions:

Subdivisions 1 and 2 of the statute each provide separate remedies for separate predicates.

Subdivision 1, an essentially substantive provision, provides that if the landlord unreasonably withholds consent, "the landlord must release the tenant from the lease upon request of the tenant." Subdivision 1 contains no provision that such unreasonable withholding of consent shall be deemed a consent to the proposed sublet or assignment, or giving tenant the right to force a sublet or assignment on the landlord.

Subdivision 2, an essentially procedural provision, provides that if the landlord fails to follow the requisite procedure, including particularly a notice of his refusal stating his reasons therefor, that shall be deemed a consent to the proposed subletting or assignment, "but the tenant thereunder, shall nevertheless remain liable for the performance of tenant's obligations under said lease."

In view of the sharp delineation of separate consequences for separate predicates in each of the two subdivisions, I think it is a strained reading to impute the consequences of a violation of subdivision 2 to a situation governed by subdivision 1, i.e., to hold that violation of the obligation not to withhold consent unreasonably (the violation of subdivision 1) leads to forced consent (the consequence of the procedural violations specified in subdivision 2).

If the consequence of a violation of subdivision 1 is the same as for a violation of subdivision 2, how shall we reconcile the explicit provision of subdivision 1, that the tenant shall be released from the lease upon his request, with the explicit provision of subdivision 2, that the tenant shall nevertheless remain liable? (On the other hand, if the landlord is in violation of both subdivisions 1 and 2, i.e., his refusal is unreasonable *and* he also fails to comply with the procedural requirements of subdivision 2, then the tenant is presumably entitled to the remedies specified under both subdivisions. But as the remedies are inconsistent with each other, the tenant should have his choice. That is not the present situation.)

If the landlord violates only the provisions of subdivision 1 and not those of subdivision 2, the tenant should have only the remedy provided in subdivision 1. If the tenant is to have either release from his obligations or a forced sublease or assignment at the option or request of the tenant, why should subdivision 1 say only that the tenant may be released at his request? Clearly because that is the only remedy to the tenant.

Absent the last sentence of subdivision 1, giving the tenant the right to be released, it could well be argued that the tenant has a right to specific performance of the statutory obligation created by the preceding sentence, that the landlord shall not unreasonably withhold his consent. (*Lexann Realty Co. v Deitchman,* 83 AD2d 540, *supra.*) But I think the last sentence precludes that result.

The option to be released from his obligation under the lease is a form of relief given to the tenant precisely as partial compensation for the fact that he is not granted his request to sublet or assign. If unreasonable refusal to consent to the subletting or assignment becomes legally equivalent to consent to the tenant's request to sublet or assign so that the tenant gets what he asked for, why should the tenant be given the option to be released from his obligations under the lease as subdivision 1 provides?

If the unreasonableness of the landlord's refusal to consent (without the procedural violation of subdivision 2) is to have the same consequences as failure to comply with the procedural provisions of subdivision 2, i.e., forced con-

sent, the natural way to say it would be that if the landlord's failure to consent is unreasonable, *or* if the landlord fails to comply with the procedures specified in subdivision 2, then the consequences specified in subdivision 2 shall follow; or alternatively, the statute could have said that if the landlord unreasonably withheld consent, or the landlord failed to comply with the specified procedures, the tenant shall have the choice of either being released from the lease or being entitled to enforce the sublease or assignment.

Instead, the statute contains the sharp division: If the consent is unreasonably withheld, the tenant shall be released; if the landlord does not follow the specified procedures, the sublease or assignment shall be effective and the tenant shall not be released.

To hold that even where the lease contains no provision against unreasonably withholding consent and the landlord complies with the procedural requirements of subdivision 2, the tenant has the right to sublet or assign, gives the tenant the opportunity to trade in apartments in the present tight market. (See *Grayshaw v New Amsterdam Apts. Co.,* 106 Misc 2d 936, 940.) Further, both sides seem to assume that if the tenant has this right, then that includes the right to transfer to another the right to a renewal of the lease under the Rent Stabilization Code. If this be so (which we do not now decide), the tenant's right to sublet or assign would become substantially equivalent to permanent ownership of the apartment with the right to the permanent control of the occupancy of the apartment and to profit from sale of that right (by assignment or successive sublets), all to the exclusion of the landlord. It seems unlikely that this would accord with the legislative intent.

The interpretation I have suggested does not take care of the tenant who needs to be temporarily away and wants to sublet and retain his apartment. Perhaps that is a flaw in the drafting of the statute. In any event, that is not this case. For here, the tenant has acquired another co-operative apartment to live in and the "sublet" is for the entire remaining term of the lease, i.e., an assignment.

That the statute might have provided that unreasonable failure to consent shall also be equivalent to consent does not alter the fact that it does not so provide. All legislation is the result of compromise, the resultant of many considerations and forces. Here the final legislative compromise is the particular statute we have. It may not be a model of logic ("a camel is a horse designed by a committee") but it is the operative legislative action.

Of course if the lease provides that consent shall not unreasonably be withheld, then quite independently of the statute the tenant may sublet if the landlord unreasonably withholds his consent, and section 226-b does not take that right away from the tenant. (Cf. *Lexann Realty Co. v Deitchman,* 83 AD2d 540, *supra.*)

And equally, if a landlord reasonably withholds his consent (and does not violate the procedural provisions of subdivision 2), then the tenant acquires no additional rights, either under subdivision 1 of section 226-b of the Real Property Law or as a matter of contract law.

In the present case the lease contains no provision that the landlord shall not unreasonably withhold its consent, and the landlord gave notice with reasons. Thus, subdivision 2 is satisfied. The tenant has only the right under subdivision 1 to be released from the lease if the refusal is unreasonable.

We need not decide whether the refusal to consent here was reasonable or unreasonable, for the landlord has agreed that the tenants can be released from the lease, which is all the right that the tenants would have in my view, even if the landlord's refusal to consent to the sublet or assignment was unreasonable.

BLOOM, J. (concurring). While I agree with my brother SILVERMAN that a reversal is mandated, I would limit my concurrence to the procedural ground that a motion for summary judgment under CPLR 3212 will lie only "after issue has been joined" (CPLR 3212, subd [a]). For that reason I find it unnecessary to decide whether the factual dissimilarities between this case, on the one hand, and *Conrad v Third Sutton Realty Co.* (81 AD2d 50, mot for lv to app den 55 NY2d 601) and *Lexann Realty Co. v Deitch-*

*man* (83 AD2d 540), on the other, require that a different result be reached in this case.

I am hesitant, at this time, to enter into any discussion of the merits for, underlying this controversy, although unmentioned by either party or in Justice SILVERMAN'S opinion, there remains an undecided question: whether a landlord of residential premises who accepts an assignment or sublease for the balance of the term of the prime lease (actually an assignment) under compulsion of section 226-b of the Real Property Law is thereby required to recognize the assignee or subtenant as the "tenant in occupancy" under section 60 of the Code of the Rent Stabilization Association of New York City, Inc. and is, by reason thereof, compelled to offer him a renewal lease. The Rent Stabilization Law (Administrative Code of City of New York, § YY51-6.0, subd c, par [9]) provides for such renewal, with certain limited exceptions not here applicable. Section 60 of the Code of the Rent Stabilization Association of New York City, Inc., adopted pursuant to law, requires that the landlord shall notify "the tenant in occupancy" not more than 150 days and not less than 120 days prior to the expiration of his lease of his right to renew. Whether an assignee or sublease is a *"tenant* in occupancy" within the meaning of section 60 has not, to my knowledge, yet been determined by the Conciliation and Appeals Board. Should the prime lessee's right to assign or sublet be established at trial the issue of renewal will then be ripe for decision by CAB. If that issue be determined adversely to the prospective sublessee, it will certainly limit the desirability of other such assignments or subleases in the future, thus obviating many of the conflicts now presented to the court under section 226-b of the Real Property Law. In sum, I think it unwise to decide that question, *sub silentio,* in the guise of an interpretation of section 226-b of the Real Property Law.

MILONAS, J. (concurring). Plaintiffs Joel and Linda Shapiro are the leasehold tenants of apartment 20H at 245 East 40th Street in Manhattan pursuant to a written lease commencing July 1, 1980 and terminating June 30, 1983. By letter dated June 10, 1981, plaintiffs, through their counsel, advised defendant landlord of their intention to

sublet the apartment to one Mina Schottenfeld, effective August 1, 1981. After requesting and receiving additional information from the plaintiffs, defendant-appellant Dwelling Managers, Inc., the managing agent for the premises, advised the Shapiros that it would not consent to the sublet. The basis for the rejection was, in part, that the plaintiffs' primary residence was now the co-operative apartment which they had purchased at 345 East 83rd Street. The landlord thereupon offered to release plaintiffs from the remaining period of the lease.

The housing situation existing within the City of New York has been considered sufficiently serious to warrant remedial measures in the form of rent control and rent stabilization laws. Section YY51-1.0 of the Administrative Code of the City of New York declares that "unless residential rents and evictions continue to be regulated and controlled, disruptive practices and abnormal conditions will produce serious threats to the public health, safety and general welfare". In this respect, "exorbitant and unconscionable rent increases * * * were being exacted under stress of prevailing conditions of inflation and of an acute housing shortage resulting from a sharp decline in private residential construction * * * that such increases and demands were causing severe hardship to tenants of such accommodations and were uprooting long-time city residents from their communities". (Administrative Code, § YY51-1.0.) In the context of a housing market characterized by a severe shortage of available accommodations and high rents, the Legislature enacted section 226-b of the Real Property Law to enable tenants to relocate temporarily without forcing them to choose between the equally unattractive alternatives of losing their apartments or making double rent payments.

This court has construed section 226-b of the Real Property Law to provide that if the landlord unreasonably withholds permission to a proposed sublease, the landlord shall be deemed to have consented thereto. (*Lexann Realty Co. v Deitchman,* 83 AD2d 540; see, also, *Conrad v Third Sutton Realty Co.,* 81 AD2d 50.) In the instant matter, however, the issue is whether a landlord's refusal to agree to a sublet is unreasonable where it is predicated upon the

undisputed fact that the apartment involved is no longer the tenants' primary residence.

An examination of the applicable rent control and rent stabilization statutes indicates that the protections afforded therein were indeed intended to benefit tenants with regard to their primary residences. Thus, section 5 of the Local Emergency Housing Rent Control Act (L 1962, ch 21, § 1), which provides the authority for local rent control legislation, states, in effect, that where a particular housing accommodation is not occupied by a tenant as a primary residence, the appropriate city agency may, upon application of the landlord, issue an order decontrolling that apartment. Similarly, section 54 of the Code of the Rent Stabilization Association of New York City, Inc. establishes a procedure whereby the owner may apply to the Conciliation and Appeals Board for a determination that a dwelling unit is not being used as a primary residence and, upon such a finding, may refuse to renew the lease and evict the tenant. Clearly, it was not the purpose of section 226-b of the Real Property Law to facilitate persons who have permanently moved elsewhere in retaining their old apartments in order to derive financial gain or to assist friends or relatives.

Accordingly, where the tenant, as is the case here, has a primary residence other than the apartment in question, the landlord, in offering to release the tenant from further obligations under the lease, cannot be deemed to unreasonably withhold his or her consent under section 226-b of the Real Property Law. The tenants, therefore, are not entitled to compel the landlord to accept the proposed sublease.

Thus, the order and judgment (one paper) of the Supreme Court, New York County (MARESCA, J.), entered on November 10, 1981, which declared that the defendants had unreasonably withheld consent to the sublease and directed the defendants to consent thereto in writing, should be reversed on the law and the complaint dismissed.

KASSAL, J. (dissenting). Defendant, lessor of premises located at 245 East 40th Street, New York City, appeals from an order and judgment which declared the rights of the parties pursuant to CPLR 3001, (1) holding plaintiffs

entitled to sublet or assign the remaining term on their lease and (2) directing defendants to consent thereto.

Plaintiffs are the prime tenants of an apartment under a written lease for the term from July 1, 1980 to June 30, 1983. On or about June 10, 1981, plaintiffs sought to sublet their apartment to one Mina Schottenfeld, effective August 1, 1981, to run for the balance of the lease term. After an exchange of correspondence between counsel, the lessor refused to consent upon three specified grounds: (1) the prime tenants had purchased a co-operative apartment at 135 East 83rd Street and, as a result of the purchase, would no longer maintain the subject apartment as their primary residence; (2) the proposed sublessee does not have income from employment to secure payment of rent; and (3) the proposed subtenant already has a residence address within New York County at 175 West 12th Street. In reliance upon the foregoing, the landlord refused to consent to the proposed sublease which, since it ran for the balance of the term of the prime tenant, actually constituted an assignment.

The prime lease affords a right to assign or sublet, subject to the prior written consent of the owner, in accordance with section 226-b of the Real Property Law: "Except as provided by section 226-b of the Real Property Law of New York, the Tenant shall not assign the Lease, nor sublet the Apartment, or permit the Apartment or any part thereof to be used by anyone other than Tenant or members of the immediate family of Tenant, without the prior written consent of Owner in each case."

We find, as did Special Term, that the reasons given by the landlord in refusing to consent to the proposed assignment, were unreasonable. In accordance with our prior determinations in both *Conrad v Third Sutton Realty Co.* (81 AD2d 50, mot for lv to app den 55 NY2d 601) and *Lexann Realty Co. v Deitchman* (83 AD2d 540), section 226-b of the Real Property Law properly construed, affords a tenant with alternate remedies, where the landlord fails to conform to the statutory procedure; he may either effect his release from the remaining term of the lease or he may proceed with the proposed sublease or assignment. These alternatives are available where the landlord gives no

reason to support his refusal to consent to the subletting or assignment (Real Property Law, § 226-b, subd 2) or, where, as here, the owner relies upon grounds which are palpably insufficient and unreasonable on their face.

First, on the procedural basis, we disagree with Justices SILVERMAN and BLOOM who object to granting summary judgment relief since issue has not been joined. While we recognize that CPLR 3212 requires joinder of issue before an application for summary disposition, there is apparently no dispute on this record with respect to the operative facts and the only disagreement between the parties is as to a matter of law, i.e., the determination of what legal consequences flow from the reasons assigned by the landlord in refusing to grant permission. Under the circumstances, we fail to perceive any factual issue, real or fancied, remaining to be tried and there is no practical reason to defer until service of an answer the very application which would undoubtedly be made at that time.

Further, although the procedural issue has been raised on the appeal, no such objection was made by defendants before Special Term. Having acquiesced in the procedural posture by which the legal issue was presented, the parties have charted their own procedural course (*T. W. Oil v Con Edison Co. of N. Y.*, 57 NY2d 574, 580; *Stevenson v News Syndicate Co.*, 302 NY 81, 87). This objection, not having been raised before Special Term, may not be tendered for the first time on appeal. Both parties directly and fully addressed the legal issue on the original application thus posing for disposition what, in effect, amounts to a submission on agreed facts. Under the circumstances, there is no reason to delay a strictly legal determination, necessary to declare the rights of the parties.

The parties here adhered to the same procedure followed in *Conrad v Third Sutton Realty Co.* (*supra*) where simultaneous with the service of a summons and complaint, plaintiff served an order to show cause for declaratory judgment relief, directing the owner to consent in writing to the sublease. Other cases have sustained the same procedure, in part in reliance upon our decision in *Conrad* (see *Bragar v Berkeley Assoc. Co.*, 111 Misc 2d 333). Our colleagues who now object to the procedure as improper so

as to warrant a reversal, raised no such similar objection in *Conrad*. We find no useful purpose served in deciding this appeal on this procedural ground, particularly since objection was not raised before Special Term. Clearly, the parties consented to and acquiesced in the procedural posture by which the legal issue was raised.

On the merits, we disagree with Justice SILVERMAN's analysis of the remedies afforded by the statute. His construction would allow the tenant to proceed with the sublease where the landlord fails to give a reason in refusing to consent, as was the case in *Conrad* (*supra*), but would limit the tenant to obtaining a release from the remaining term where the landlord gives any reason for his refusal, albeit unreasonable. The statute (Real Property Law, § 226-b) specifically affords to a tenant in a residential dwelling with four or more units the right to sublet or assign, subject to the written consent of the landlord and directs that "[s]uch consent shall not be unreasonably withheld." The statute, therefore, establishes a mandatory standard and is binding upon the parties in the face of an inconsistent lease provision or where the lease does not address the issue. Moreover, here, the lease incorporates the terms and conditions of section 226-b of the Real Property Law and thus, imposes upon the landlord the statutory obligation that his consent not be unreasonably withheld. Upon that basis, the situation involved here is not at all different from that which confronted us in *Lexann Realty Co.* (*supra*) where the lease contained a clause which prohibited subletting without the landlord's consent, but provided that the consent would not be unreasonably withheld.

We find unnecessarily restrictive Justice SILVERMAN's interpretation of the statute, which would limit the remedies available to a tenant, permitting the tenant to proceed with the sublease or assignment only in those cases where the lessor failed to follow the statutory procedure and did not give any reason for refusing to consent. While subdivision 2 of section 226-b of the Real Property Law specifically provides that the failure of the landlord to send a notice shall be deemed a consent, the statute does not preclude a similar result where the landlord is found to have unrea-

sonably withheld consent. Subdivision 1 of section 226-b of the Real Property Law provides a remedy to the tenant to be released from the lease where the landlord unreasonably withholds consent. The statute, however, does not limit the tenant to that remedy. As we held in both *Conrad* and *Lexann Realty,* the unreasonable refusal to consent may be deemed a consent. The restrictive view adopted by Justice SILVERMAN unnecessarily permits the landlord to impinge upon the right to assign or sublet which the Legislature afforded to the tenant. In any case, were the landlord permitted to rely upon any excuse or reason for his refusal to consent, albeit improper and unreasonable, he would thus be afforded a most convenient means to effect removal of the tenant and thereby regain possession. Patently, the practice thus sustained would frustrate the legislative purpose.

While we are in agreement that further legislative action may be desirable to clarify the respective rights of the parties, we cannot subscribe to a restrictive interpretation which would limit the remedies available to a tenant, depending upon whether the landlord refused to consent, without assigning any reason, or, in lieu thereof, relied upon a palpably insufficient ground, which was unreasonable as a matter of law. Such an approach overlooks the underlying legislative purpose to afford the tenant a right to assign or sublet, subject only to the lessor's refusal to consent based upon rational grounds.

The construction adopted by Justice SILVERMAN overlooks the fact that, prior to the statutory enactment, when the landlord violated an agreement not to withhold his consent unreasonably, the tenant could avail himself of a variety of remedies. He could ignore the restriction in the lease and proceed with an assignment or subletting of the premises; he could proceed by way of declaratory judgment to determine whether the landlord's consent was unreasonably withheld; he could maintain an action for damages; or he could sue for specific performance of the agreement (see 2 Rasch, New York Landlord and Tenant [2d ed], § 269). The only remedy which was not afforded to the tenant was to quit possession and abandon the leased premises, extinguishing the obligation to pay rent *ibid.*). The enactment of

section 226-b of the Real Property Law effected a change in the law by giving to the tenant, as an alternate remedy, the right to obtain a release from the lease where the landlord unreasonably withheld consent. Contrary to the opinion of our colleague, however, this did not eliminate the other remedies available to the tenant, but rather, expanded the rights of the tenant by affording to him a remedy in addition to those that he already had.

In lieu of the piecemeal interpretation of the statute, we adhere to our prior determination in *Conrad v Third Sutton Realty Co. (supra)* as dispositive of the issue raised here. We see no reason to erode the legal principle announced there nor to limit the holding to those cases where a landlord fails to give any reason for refusing to consent to an assignment or subletting of the premises. Such a construction would unnecessarily eliminate a class of tenants intended to be protected from the scope of the statute. Thus, we find our observation in *Conrad,* in delineating the respective rights and obligations of the parties as dispositive of the issue herein (81 AD2d, at pp 55-56): "Accordingly, it becomes clear that under both sections, as amended, the release of the tenant from the lease becomes automatic at the option of the tenant and the landlord is required to set forth his reasons for refusing the tenant's request for consent to sublease * * * To interpret the section as defendant would have us do would result in injury to the plaintiff tenant's position, which was not contemplated by the Legislature. In fact, this result would be an incentive for landlords to unreasonably withhold their consent to a sublease for the purpose of obtaining a vacancy for rerental with an attendant increase. If the rights of tenants were limited to merely being released from the lease after a rejection of the sublease, as argued by the landlord, then the statutory mandate of requiring the landlord not to unreasonably withhold consent would be meaningless. This we are not prepared to sanction."

Similarly, we held in *Lexann Realty Co. v Deitchman (supra)* adopting the dissent by Justice ASCH, then sitting in the Appellate Term in that case, that section 226-b of the Real Property Law was designed to afford to the tenant two remedies, at his option, namely, to surrender the lease

under subdivision 1 of section 226-b and, the other, to compel the landlord to accept the sublessee or assignee under subdivision 2 thereof (see, also, *Conrad v Third Sutton Realty Co.,* 81 AD2d, at pp 56-57). Instructive is our observation in *Conrad v Third Sutton* (*supra,* p 57) "To interpret this section as defendant would have us do, ignores the fact that this legislation was passed to increase a tenant's rights and provide him with a modicum of negotiating capacity during a period of housing shortages. This court cannot disregard the legislative intent behind this statute. One of the sponsors of this legislation, Senator Halperin, stated when the bill was submitted, that: 'Housing shortages and inequities to the tenants may be alleviated by this bill through the allowance of a tenant to sublease his premises when they are not in use'."

Accordingly, consistent with our holdings in both *Conrad* and *Lexann Realty* (*supra*), where a landlord, in response to a request by a tenant to assign or sublet, unreasonably withholds consent, either by failing to conform to the statutory procedure, or in giving as the reason for the refusal grounds which are patently insufficient and unreasonable, the tenant may avail himself of the alternate remedies afforded by the statute, either by surrendering possession and being released from the remainder of the lease term or, upon a finding that the landlord had unreasonably withheld consent, by proceeding with the proposed sublease or assignment.

We also disagree with the views expressed by Justice MILONAS, who has concluded that the reason given by the landlord for withholding consent was reasonable, i.e., that the prime tenants, having purchased a co-operative apartment elsewhere, would no longer maintain the subject apartment as their primary residence. The approach, we feel, overlooks the express language of the statute and thus disregards the intention of the Legislature, which specifically affords to the tenant under section 226-b of the Real Property Law, a right to assign *or* sublet the premises. Justice MILONAS, in concurring, would limit the statutory right only to cases where the tenant intends to return, i.e., where he continues to maintain the subject premises as his primary residence. However, by definition and legal effect,

an assignment, as distinguished from a sublease, is a transfer of the tenant's entire interest in the premises and, in such cases, a tenant having conveyed the remainder of his leasehold interest, will not return to or continue to maintain the premises as his primary residence. This is in sharp contrast to a subletting, whereunder the tenant retains a reversionary interest. The reasoning propounded by Justice MILONAS, in permitting only sublessees and not assignees to be afforded the protection of section 226-b of the Real Property Law, is in clear conflict with the statute, which affords the tenant a right to assign or sublet.

Whether the landlord would in the future be required to recognize the assignee as the "tenant in occupancy" under section 60 of the Code of the Rent Stabilization Association of New York City, Inc., with the obligation to offer a renewal lease, is not before us on this appeal. Justice BLOOM observes that, to his knowledge, the issue has not as yet been passed upon. However, assuming that to be the case, we do not perceive the necessity of deferring determination of the specific legal issue raised in this action, which is ripe for disposition, until some future time when the issue as to the applicability of section 60 of the Code of the Rent Stabilization Association of New York City, Inc. might be determined by the administrative agency.

For the foregoing reasons, we agree with Special Term that the grounds relied upon by the landlord in refusing to consent to the assignment were unreasonable. Lacking in merit is the second ground urged by the landlord, that the proposed tenant is not gainfully employed. The record clearly reflects that the proposed subtenant/assignee has independent means. She receives "equitable distribution" in the sum of $12,750 per year, payable over the next 20 years, plus $12,000 per year in alimony, concededly sufficient to satisfy the $1,017.84 monthly rental.

Similarly lacking in merit is the last reason ascribed by the landlord, that the proposed subtenant already has a New York City residence. According to Ms. Schottenfeld, that address is her daughter's apartment, where she has temporarily resided until occupancy of the subject apartment could be secured. Nevertheless, even were no explanation given, this reason alone does not support the land-

lord's refusal to consent since, in almost every case, a proposed subtenant or assignee has a prior residence before securing or while awaiting possession. To conclude otherwise would improperly restrict the scope of the statutory protection to situations where the proposed sublessee or assignee, prior to the sublease or assignment, lived outside of the City of New York.

Accordingly, since none of the reasons given by the lessor may properly support the refusal to consent, we find the lessor unreasonably withheld consent, thereby entitling the tenants to avail themselves of the alternate remedies afforded by the statute. As was directed by Special Term, plaintiffs may proceed with the sublease/assignment, with entry of a judgment directing defendants to consent thereto.

The result reached does not conflict with the underlying legislative purpose expressed in section 226-b of the Real Property Law, which is to afford to a tenant a right to assign or sublet, subject only to the right of the landlord to refuse to consent upon reasonable ground. In leasing the premises to the prime tenant in the first instance, the landlord relinquished possession for the full duration of an agreed term at an agreed rental. Appellants have suggested that a windfall would result to the tenant were we to grant permission to assign or sublet when the tenant does not maintain the property as his primary residence. However, were we to permit the landlord to be relieved of its obligations under the lease, as a result of the lessor's own conduct in ascribing an unreasonable reason for his refusal to consent, would this not similarly grant a windfall to the landlord, who would thereby gain a right to rerent the property at a higher rental during the same period that he agreed to lease the premises? In either case, one party or the other is afforded relief more or less than he anticipated or bargained for at the beginning of the lease term. It is conceivable that a proposed assignment may result from the need to dispose of the lease quickly with a possible loss of rental or other moneys.

Although further legislative clarification is needed, the statute as it presently exists, accords relief to the tenant, consistent with the legislative purpose, which confers upon

a tenant the right to assign or sublet on the stated condition, that the written consent of the landlord shall not be unreasonably withheld. Thus, this determination, consistent with our prior holdings in both *Conrad* and *Lexann Realty (supra)*, gives effect to the underlying policy of the statute, without interposing by judicial action what the Legislature has not specifically provided for.

Accordingly, the order and judgment (one paper), Supreme Court, New York County (MARESCA, J.), entered November 16, 1981, which granted plaintiffs' motion, declaring their entitlement to proceed with a sublease or assignment of their apartment and directing defendants to consent thereto in writing, should be affirmed.

---

### DECISION OF THE COURT

The order and judgment (one paper) of the Supreme Court, New York County (MARESCA, J.), entered November 10, 1981 granting plaintiffs' motion for judgment declaring that they are entitled to sublease or to assign the lease to their apartment and directing defendants to consent in writing thereto, should be reversed, on the law, without costs, the motion denied, the judgment vacated and the matter remanded for further proceedings.

SILVERMAN, BLOOM and MILONAS, JJ., each concur in separate opinions and KASSAL, J., dissents in an opinion in which SANDLER, J., concurs.

Order and judgment reversed, etc.