■ Patrick W. Vance et al., Appellants, v Century Apartments Associates et al., Respondents. — Order of the Supreme Court, New York County (McQuillan, J.), entered November 23, 1982, which denied the plaintiffs' motion for a preliminary injunction to compel the defendants to consent to a sublease of the plaintiffs' apartment, affirmed, without costs. The apartment in question at 25 Central Park West is rent stabilized, and the plaintiffs and their two infant children have resided there pursuant to a three-year lease which commenced June 1, 1981 and will end May 31, 1984. There was a provision against assignment or subletting without the written prior consent of the owner, except "as provided by section 226-b of the Real Property Law." In the summer of 1982, with the coming of their second child, the plaintiffs found that the apartment was too small and decided to move to a larger apartment in Pelham, New York, and to sublease the Central Park West apartment in question for a term 15 days less than the term of their lease. The issue is whether consent to the sublet was unreasonably withheld. There is an excellent analysis of the background with respect to section 226-b in *Kruger v Page Mgt. Co.* (105 Misc 2d 14 [Ryp, J.]), and this court has in a number of cases analyzed the meaning of the section, commencing with *Conrad v Third Sutton Realty Co.* (81 AD2d 50, mot for lv to app den 55 NY2d 601; see, also, *Lexann Realty Co. v Deitchman,* 83 AD2d 540; *Kreitman v Einy,* 92 AD2d 801; *Lapidus v Melohn Props.,* 90 AD2d 699; *Margolin v 25 Cent. Park West Assoc.,* 91 AD2d 879; and, most recently, *Shapiro v Dwelling Managers,* 92 AD2d 52). The purpose of section 226-b, in the context of the present case, was to prevent a landlord from withholding consent to a legitimately proposed assignment or sublease to a financially responsible assignee or subtenant. It was not to create a new class of landlord. The issue in the present case is whether the tenant legitimately anticipates the possibility of return to the apartment. It is contended that the tenant is merely seeking to retain a connection with the apartment in order to take advantage of a co-operative conversion. Under these circumstances, it cannot be said, at this stage, that the landlord is unreasonable in withholding consent to the sublet and, accordingly, a preliminary injunction is unwarranted. Concur — Murphy, P. J., Kupferman and Alexander, JJ.

Fein and Kassal, JJ., dissent in a memorandum by Kassal, J., as follows: The same policy considerations and legal principles which prompted my dissent in *Shapiro v Dwelling Managers* (92 AD2d 52) impel me to dissent here. I conclude that the reason given by the landlord in refusing to consent to the proposed sublease, namely, that the lessor believes that the prime tenants

have no intention of returning and will no longer maintain the premises as their primary residence, is insufficient as a matter of law and unreasonable under section 226-b of the Real Property Law. Plaintiffs, prime tenants of apartment 29-Q at 25 Central Park West, New York City, appeal from an order which denied their motion for preliminary injunctive relief. The action was brought to declare that defendants, landlord and managing agent of the building, have unreasonably withheld permission to sublease the apartment for a term to end 15 days prior to expiration of the prime lease. The complaint also seeks mandatory injunctive relief directing defendants to consent to the proposed sublease. Plaintiffs have resided within the rent-stabilized building under a lease providing for a three-year term, commencing June 1, 1981 and ending May 31, 1984. The lease incorporates the statutory right afforded to a tenant under section 226-b of the Real Property Law permitting the tenant to assign or sublet subject to the prior written consent of the owner: "Except as provided by section 226-b of the Real Property Law of New York, the Tenant shall not assign the Lease, nor sublet the Apartment, or permit the Apartment or any part thereof to be used by anyone other than Tenant or members of the immediate family of Tenant, without the prior written consent of Owner in each case." In August, 1982, following the birth of their second child, plaintiffs sought the permission of the landlord to a sublease of the apartment to one Alan Kennedy for a term to run, initially, from September 1, 1982 and later, from October 15, 1982 until May 15, 1984, 15 days prior to the end of the prime lease. The prime tenants had secured a larger apartment in Pelham, New York, conceding that the subject apartment had become too small to meet their current needs. After the submission of responses to a questionnaire transmitted by the landlord, there followed an exchange of correspondence, which culminated in defendants refusing to consent to the proposed sublease, in large part upon the following ground: "The landlord does not believe that it was ever the intention of Section 226-b to permit you to relocate to Pelham, New York, and compel the landlord to accept the subletting for fifteen days less than the balance of the lease. It would appear that they [plaintiffs] are trying to keep a connection with this apartment, for reasons known only to themselves, perhaps for reasons of financial gain. Their present lease is set to expire on May 31, 1984 and you are no doubt seeking to retain fifteen days for yourself in an attempt to then compel the landlord to renew their lease again." The letter from defendants' counsel, citing the fact that the prime tenants were leaving no furniture in the apartment, concluded that plaintiffs had no intention of returning thereto. It was also observed that the proposed subtenant, a resident of Philadelphia, self-employed and a homeowner there, did not set forth the nature of his employment, albeit he recorded $50,000 in income. Although the correspondence raised the right of the landlord to ascertain the nature of the proposed subtenant's assets, the sufficiency of his response is not at issue on this appeal. Subsequent correspondence between the parties reflected that Kennedy owned real estate in Pennsylvania, earned over $20,000 per year in income from real estate rentals, interest and stock dividends and maintained, on an average, $10,000 in a Delaware money market fund. Unquestionably, his income and assets are more than sufficient to cover the monthly rental on the apartment in the sum of $775. The only real issue posed is whether the landlord may properly refuse consent upon the lessor's belief that the prime tenant has no intention of returning in the future and will no longer maintain the apartment as his primary residence. I conclude, contrary to the determination reached by my colleagues, that, under the terms of section 226-b of the Real Property Law, the subjective views of the lessor do not constitute reasonable grounds to withhold consent. The contrary position assumed both

by Special Term and by the majority here improperly usurps the legislative function. There is nothing in the statute to authorize or sustain the conclusion that a landlord may veto a contemplated sublease based solely upon the lessor's subjective belief that, in the future, his prime tenant will not occupy the premises as his primary residence and has no intention of returning. Subdivision 1 of section 226-b of the Real Property Law provides as follows: "A tenant renting a residence in a dwelling having four or more residential units shall have the right to sublease or assign his premises, subject to the written consent of the landlord given in advance of the sublease or assignment. Such consent shall not be unreasonably withheld. If the landlord unreasonably withholds consent for such sublease or assignment, the landlord must release the tenant from the lease upon request of the tenant." The statute does not, either expressly or implicitly, condition the right of the tenant to assign or sublet upon an affirmative showing that he intends to return and that he will, in the future, maintain the premises as his primary residence. For the majority to so conclude, in the face of the silence by the Legislature on the issue, is improper, and imposes by judicial action what the Legislature has not seen fit to legislate. Had the Legislature intended to so restrict the right of the tenant, it would have included therein an appropriate limitation on the rights afforded to the tenant. The failure to do so does not warrant legislation by this court. The design of the statute clearly evinces the legislative purpose to afford to a tenant rights without regard to whether the tenant will maintain the premises as his primary residence in the future. This is partially evidenced by the fact that section 226-b does not distinguish between the tenant's right to assign or sublet. Clearly, an assignment, as distinguished from a sublease, constitutes a transfer of the remainder of the tenant's entire leasehold interest in the premises. Except where there is a default by the assignee, the assignor will never return or continue to maintain the premises as his primary residence. This contrasts with a subletting, where the tenant retains a reversionary interest in the leasehold. Indeed, the Legislature, fully cognizant of the legal implications which flow from a sublease in contrast to an assignment, had a specific purpose in including both categories. The statute expressly grants to the tenant "the right to sublease or assign his premises", subject only to the landlord's withholding consent on reasonable grounds. The approach taken by the majority here effectively rewrites the statute to eliminate the tenant's right to assign since, in every such case, the prime tenant will not maintain the premises as his primary residence. To sustain the fact that the assignor has another primary residence as a basis for the landlord's withholding of consent to a sublease engrafts upon the legislation an additional requirement never intended when the statute was enacted. While I am in agreement, as I observed in my dissent in *Shapiro v Dwelling Managers* (*supra*) that further legislative action is desirable to clarify the respective rights of the parties, the majority's extension of the landlord's rights under the statute is unwarranted and unauthorized. Thus, the landlord is permitted to impose a subjective standard by precluding the tenant from proceeding with the sublease solely upon the basis that the lessor "believes" that the prime tenant does not intend to return to or to maintain the apartment as his primary residence. However, the courts have never permitted a landlord to subjectively exercise its belief as to whether the prime tenant will return to the apartment in the future. Where a lease affords to a tenant a right to assign or sublet subject to the consent of the landlord, the reasonable ground to support a withholding of consent has always been tested by an objective standard, relating to the acceptability of the proposed subtenant or assignee. Thus, among the relevant criteria from the point of view of the landlord are the character and financial responsibility of the proposed tenant and the nature of the occupancy or purposes for which the

property is to be used (see *American Book Co. v Yeshiva Univ. Dev. Foundation,* 59 Misc 2d 31, where a lessor's refusal to consent, premised upon religious and ideological differences between the landlord and the subtenant was found to be unreasonable). The ground relied upon by the landlord here is palpably insufficient and improper as a matter of law. Instructive is the observation in 1 Rasch, New York Landlord and Tenant, Summary Proceedings (2d ed, § 267, pp 348-349), wherein the author observes: "Where a landlord agrees that he will not unreasonably withhold his consent, the landlord's refusal to consent will have to stand on something better than mere caprice or whim. His refusal will have to be, as he agreed, 'reasonable' * * * In other words, to be reasonable, the landlord's reasons for a refusal should be objective, rather than subjective. The courts have adopted a policy of judicial disapproval of subjective reasons, which have been characterized as mere caprice or whim. By 'objective' reasons are meant those standards which are readily measurable criteria or a proposed subtenant's or assignee's acceptability, from the viewpoint of *any* landlord. These criteria are: (a) financial responsibility; (b) the 'identity' or 'business character' of the applicant; i.e., his suitability for the particular building; (c) the legality of the proposed use; (d) the nature of the occupancy; i.e., office, factory, clinic, or whatever. These categories would form a ready basis upon which to predicate a 'reasonable' refusal". The reason ascribed for the refusal to consent in our case does not fall within the categories of permissible objective criteria. The majority, in condoning application of a subjective standard, has followed an unprecedented course which erodes the import of our prior disposition in *Conrad v Third Sutton Realty Co.* (81 AD2d 50, mot for lv to app den 55 NY2d 601). The end result is to render wholly meaningless the statutory right afforded to the tenant, which now may be defeated in virtually every case by the subjective interpretation by the landlord that the prime tenant has surrendered all right to return to or to resume residence in the future. In both their brief on this appeal and at oral argument, defendants sought support for the refusal to consent by reference to section 54 of the Code of the Rent Stabilization Association of New York City, Inc. (Code), which on the surface permits a landlord to refuse renewal on the ground that the apartment is not occupied as the tenant's primary residence. To the contrary, whether the landlord may properly refuse to renew this lease at the expiration of the stated term is not now before us. Section 54 of the Code affords to a landlord, within 150 to 120 days prior to expiration of the lease, the right to apply before the Conciliation and Appeals Board (CAB) for a determination that no renewal lease need be offered since the apartment is not occupied as the tenant's primary residence. The Code, however, does not permit the landlord, in the first instance, to assert the absence of primary residence as a basis for refusing to consent to a sublease of the apartment. In a somewhat analogous situation involving a co-operative conversion, in the case of a dispute between the prime tenant and the subtenant in possession concerning the right to purchase the co-operative shares, the courts have consistently held primary residence to be an irrelevant consideration. This result has been followed even where the offering plan permits exercise of such right only by a tenant in occupancy (see *Wissner v 15 West 72nd St. Assoc.,* 87 AD2d 120; *Thuna v Di Sanza,* 102 Misc 2d 342, affd 78 AD2d 517; *Trachter v Parker 86th Assoc.,* 115 Misc 2d 271). By the same token, primary residence is an irrelevant and immaterial consideration, in that it does not satisfy the requisite objective criteria to be relied upon by a landlord in refusing to consent to either an assignment or a subletting of the premises. Moreover, I fail to perceive the rationale by which the majority has concluded, as a matter of law, that plaintiffs will not return to and resume residence at the expiration of the sublease. Such a determination involves what is peculiarly a factual issue and

cannot be resolved solely upon affidavits submitted on a motion for preliminary injunctive relief. The only facts contained in this record and bearing upon the issue, assuming it to be relevant of course, are that the prime tenants have leased a larger apartment in Pelham, New York, and have moved their furnishings to that residence. However, neither the relocation of the furniture nor the rental of another apartment without the city limits, standing alone, supports the conclusion reached that plaintiffs do not intend to return. The majority has summarily sustained the speculative belief of the landlord that the prime tenants do not intend to resume residence at the expiration of the sublease. Although I consider the issue to have no dispositive effect at all, the record is patently insufficient to resolve the factual issue. No proof has been offered to in any way support the belief on the part of the landlord that plaintiffs have no intention of returning at the expiration of the sublease; nor that they are "trying to keep a connection with this apartment, for reasons known only to themselves". It is just as conceivable that (1) the plaintiffs wish to provide themselves with the option of returning to this apartment, in place of Pelham, at the expiration of the sublease; or (2) they seek to retain the legitimate right to purchase the apartment in the event of a co-operative conversion; or (3) they seek to realize some repayment on account of substantial leasehold improvements. But it is not the province of the landlord — or the court — to determine by speculation the motives of the prime tenant. Similarly there is no support in the record for the finding by Special Term that plaintiffs "elected to permanently leave the City." At the least, these factual determinations require some evidentiary support. They cannot be finally resolved solely upon affidavits, particularly where both sides considered only the legal issue as to whether another primary residence satisfied the requisite objective standard upon which a landlord could properly rely. Accordingly, the order, Supreme Court, New York County (McQuillan, J.), entered November 23, 1982, should be reversed, on the law, the motion for declaratory and mandatory injunctive relief granted, declaring plaintiffs' entitlement to proceed with the proposed sublease and directing defendants to consent thereto in writing, the landlord having failed to offer a cognizable reasonable ground for its refusal to consent to the sublease.