Dorothy H. HAUGNESS, Petitioner,

v.

**DISTRICT UNEMPLOYMENT COMPENSATION BOARD, Respondent.**

No. 11890.

District of Columbia Court of Appeals.

Submitted Aug. 16, 1977.

Decided May 15, 1978.

Dorothy H. Haugness, pro se.

Russell L. Carter, Bill L. Smith, Robert J. Hallock and Earl S. Vass, Jr., Washington, D. C., were on the brief for respondent.

Before KERN and NEBEKER, Associate Judges, and HOOD, Chief Judge, Retired.

NEBEKER, Associate Judge:

This is a petition for review of a decision of the District Unemployment Compensation Board (hereafter, the Board) finding the petitioner ineligible for unemployment benefits.

Petitioner was employed from June 1973 to February 1974 by Management Services Company, a California-based firm under contract with the Unemployment Insurance Service of the United States Department of Labor to perform a review of unemployment insurance programs in various states. Civil Service restrictions prevented the Department of Labor from directly hiring petitioner, so Management Services Company hired her as part of a consultant project contracted for by the Department of Labor.[1]

When first hired, petitioner resided in California, but later changed her residence to Idaho. Petitioner's work on this project involved visits lasting from three to ten days in nineteen different states, including the District of Columbia where, *inter alia*, she received training for her employment. Petitioner has filed unsuccessful claims against California, Idaho and Maryland.[2]

On the basis of an interstate hearing held in Idaho, the appeals examiner found 1) petitioner had no employment history in the District, 2) her employer's base of operations was in California, 3) her work was "basically" directed and controlled from California, and 4) she did not reside in the District. The Board adopted that decision as its own, and this petition for review followed.

■ In reviewing the Board's action, we are required to interpret statutory provisions when questions arise regarding those provisions. D.C.Code 1973, § 1–1510(1). The question presented here is the definition of the statutory terms "direction and control," as contemplated by D.C.Code 1973, § 46–301(b)(2).

That statute provides in pertinent part:

The term "employment" shall include an individual's entire service, performed within, both within and without or entirely without the District if—

(A) the service is localized in the District; or

(B) the service is not localized in any State but some of the service is performed in the District and (i) *the individual's base of operations, or, if there is no base of operations, then the place from which such service is directed or controlled, is in the District* [emphasis added]; or (ii) the individual's base of operations or place from which such service is directed or controlled is not in any State in which some part of the service is performed but the individual's residence is in the District,

(C) the service is performed anywhere within the United States, the Virgin Islands, or Canada: *Provided* [emphasis in original], That (i) such service is not covered under the unemployment compensation law of any State, the Virgin Islands, or Canada, and (ii) the place from which the service is directed or controlled is in the District.

The record supports the Board's finding that petitioner did not meet three of the four tests: localization of service, base of operations and residence. As to the fourth test, the place of direction and control, the appeals examiner found:

In matters of scheduling, overtime, personnel rules and so forth, the claimant indicated that she primarily cleared these matters through her employer's California office. Her paychecks were also issued from Sacramento, California, the employer's base. . . .

---

1. On remand proceedings ordered by this court after submission, the Board found that petitioner had the necessary employee relationship with her employer to be eligible for unemployment benefits. *See* D.C.Code 1973. § 46–301(b)(1)(A)(ii).

2. The Unemployment Insurance Service was first located in Silver Spring, Maryland, and later moved to Washington, D.C.

Although petitioner's testimony revealed that some scheduling matters such as overtime were handled by the California office, she testified without contradiction that the travel schedule was arranged by the Department of Labor in Washington in order to coordinate and best utilize the time of petitioner and the government employees she visited in the evaluation and review process:

Claimant: Well, now, if our schedule, if we found a problem with the time we were going to work or we were going to run overtime or anything which would have to do with our wages, we had to check with the California employer.

Examiner: I see.

Claimant: In fact, he gave us a whole set of personnel rules which apply to us as well as all the other people.

Examiner: Well, did he, excuse me, go ahead.

Claimant: Technical questions went to Washington.

Examiner: *Did the employer out in California arrange your schedule?*

Claimant: *He didn't give us a schedule, no. We got the schedule through the Washington representative, not his representative,* but . . . in other words, Washington was making a schedule for all these people, which is normal when they are conducting an evaluation. It's a rather, what do we say, a polite thing to do for the Federal government to make arrangements for the people who are going to come into the local offices, so that people in the local offices can offer any suggestions if it is going to interfere with their work pattern. . . . [Emphasis added.]

Petitioner later was asked about scheduling, personnel and technical matters. While it is not clear what type of scheduling was meant, it is clear that technical matters, directed from Washington, D.C., excluded personnel and scheduling, and thus included supervision of the merits of the performed duties:

Examiner: Now, the technical matters then, in performance of the contract, you coordinated with U.S. Department of Labor. Is this correct?

Claimant: That's right.

Examiner: And then the scheduling of personnel matters, you coordinated with either the representative, the employer's representative in Washington, D.C. or in California?

Claimant: That's right.

Examiner: Was that pretty much an even concept as to where the direction came from, or who did you receive the bulk of the direction from, one place or another?

Claimant: It's really a little hard to say what you consider direction and what you consider technical advice. And . .

Examiner: Well, I meant the direction as far as personnel matters were concerned, where you were dealing only with employer representatives.

Claimant: I'd say it was probably a toss up. I'd have to go back and think about that because if something came up that had to do with overtime or anything that was essential to our salary, it had to be checked out in California.

██ Given that petitioner received job training in the District, obtained technical direction regarding performance of the contract from the Department of Labor, and also had her travel to various states scheduled and coordinated by the Department, we cannot say that the Board's finding of California as the place of direction and control is proper. The record reveals that the California-based employer controlled what were primarily administrative matters. The Board relied on such matters in its finding, apparently slighting the significance of technical supervision and guidance, and ignoring the training and scheduling of visits to local offices. In so doing, the Board seemingly has concluded that the touchstone for "direction and control" as provided in D.C.Code 1973, § 46–301(b)(2) is administrative decisions in the employment relationship. While deference ordinarily should be given to an agency's interpretation of its administered statutes, we hold

that this unarticulated conclusion is far from the mark legislatively envisioned. Surely "direction and control" must encompass more than working hours and similar personnel matters.[3] We believe the phrase was intended to relate to the merits of the work performed, which this record shows occurred in this jurisdiction.

■ That being our holding, we are left with the conclusion that the decision of the Board is legally erroneous and must be set aside with directions to grant the benefits required because petitioner did receive direction and control for her services in the District of Columbia, as contemplated by D.C.Code 1973, § 46–301(b)(2).

*Reversed.*

HOOD, Chief Judge, Retired, dissenting:

The claimant, then a resident of California, was hired by, paid by, and could have been discharged by, Management Services Company of California. Her work, consisting of a series of studies of three to ten days duration in 19 states, was done under a contract her employer had with the United States Department of Labor.

Having unsuccessfully made claim for unemployment compensation in California, Idaho (where she established a residence after leaving California), and Maryland (where the Unemployment Insurance Service Office was located before moving to the District of Columbia), she sought relief from the District of Columbia.

Although the Labor Department had some part in directing the work done by the claimant, the Appeals Examiner found that her services were basically directed and controlled by her employer from its California office. That finding has a factual basis in the record and this court should not disregard it. I would affirm.

---

**3.** *See Haugness v. Cal. Unemployment Ins. Appeals Bd.*, Cal.Super.Ct. (No. 265453, April 28, 1977, slip. op. at 6) (contained in the record), holding that "direction and control" did not emanate from the place where the employment originated or where bookkeeping functions were conducted.