OPINION OF THE COURT

Per Curiam.

Final judgment entered April 3, 1980 is modified to the extent of reducing the award of use and occupancy from $1,426.91 to $1,097.64 and, as so modified, affirmed, with $25 costs.
Tenant’s lease, extended until May 19,1982 by modification and extension of léase agreement, executed pursuant *75 to the Rent Stabilization Law (Administrative Code of City of New York, ch 51, tit YY), prohibits tenant from subletting the premises without the landlord’s written consent, albeit the lease provides that the landlord is not to unreasonably withhold such lease. The tenant sought landlord’s permission to sublet her apartment and the record amply supports the conclusion that the landlord unreasonably withheld that consent. Indeed, we are told by the tenant that landlord, besides rejecting the specific subtenant proffered by the tenant, refused categorically to consent to any subletting of the apartment. In spite of the landlord’s refusal to consent to the subletting of tenant’s apartment, the tenant moved out of the apartment and the proposed subtenant, who had been specifically rejected by landlord, moved in. At the time of trial, tenant resided in another apartment located in the same borough as the apartment from which she admittedly moved.
At one time, leases under which the tenant agreed not to sublet without permission of the landlord and the landlord agreed not to unreasonably withhold such consent were held to create only a negative covenant on the part of the landlord, the tenant’s remedy for landlord’s unreasonably withholding such consent being of limited dimension. Thus, Rasch states (1 New York Landlord & Tenant, Summary Proceedings [2d ed], § 267, p 348) “A qualification of the tenant’s covenant not to assign without consent by the addition of the phrase ‘but such consent will not be unreasonably withheld’, does not bind the landlord to anything” (see Sarner v Kantor, 123 Misc 469). Later authorities in the case of both residential and commercial tenancies, provided the tenant under these circumstances with a host of available remedies including the following: (1) ignoring the refusal and subletting, (2) securing relief through declaratory judgment, (3) an action for damages, (4) an action for specific performance (see cases cited in 1 Rasch, New York Landlord & Tenant, Summary Proceedings [2d ed], § 269; 34 NY Jur, Landlord & Tenant, § 265).
By statute, section 226-b of the Real Property Law, effective June 3,1975, the Legislature dealt with the right to sublease residences “in a dwelling having four or more residential units” when the lease, as in the case at bar, is *76 executed, after the effective date of the law. Section 226-b of the Real Property Law provides:
“1. A tenant renting a residence in a dwelling having four or more residential units shall have the right to sublease or assign his premises, subject to the written consent of the landlord given in advance of the sublease or assignment. Such consent shall not be unreasonably withheld. If the landlord unreasonably withholds consent for such sublease or assignment, the landlord must release the tenant from the lease upon request of the tenant.
“2. The tenant shall inform the landlord of his intent to sublease or assign by mailing a notice of such intent by registered or certified mail. Such request shall be accompanied by the written consent thereto of any co-tenant or guarantor of such lease and a statement of the name, business and home address of the proposed sublessee or assignee. Within ten days after the mailing of such request, the landlord may ask the sender thereof for additional information as will enable the landlord to determine if rejection of such request shall be unreasonable. Within thirty days after the mailing of the request for consent, or of the additional information reasonably asked for by the landlord, whichever is later, the landlord shall send a notice to the sender thereof of his consent or, if he does not consent, his reasons therefore. Landlord’s failure to send such a notice shall be deemed to be a consent to the proposed subletting or assignment. If the landlord consents, the premises may be sublet or assigned in accordance with the request, but the tenant thereunder, shall nevertheless remain liable for the performance of tenant’s obligations under said lease.
“3. The provisions of this section shall not apply to leases entered into or renewed before the effective date of this section.”
It is not denied that the tenant herein, in requesting of landlord permission to sublet her apartment, complied with all of the procedural requirements set forth in subdivision 2 of section 226-b of the Real Property Law.
Section 226-b appears modeled upon section 236 of the Real Property Law, which provided for the release from *77 liability under a lease of the estate of a deceased lessee of residential premises upon the landlord’s unreasonable refusal to consent to a sublease of the premises. The courts have established objective criteria, at least insofar as commercial subleases are concerned, to determine the reasonableness of a refusal to consent to a sublease (see American Book Co. v Yeshiva Univ. Dev. Foundation, 59 Misc 2d 31; 1 Rasch, New York Landlord & Tenant, Summary Proceedings [2d ed], § 267, p 349). As noted above, the record before us points to the inescapable conclusion that the refusal of the landlord to consent to tenant’s request to sublet her apartment was unreasonable and based on no valid objective criteria.
Subdivision 1 of section 226-b of the Real Property Law sets forth the consequences of a landlord’s unreasonable refusal to permit a tenant to sublet as: “the landlord must release the tenant from the lease upon request of the tenant.” There is little authority, and no appellate authority, dealing with the ramifications of a landlord’s unreasonable refusal to consent to subletting in a tenancy governed by section 226-b. In Kruger v Page Mgt. Co. (105 Misc 2d 14), the court held that a tenant may sublet his apartment when the landlord unreasonably refuses to consent to a sublease. In 39 Remson Co. v Braune (NYLJ, July 17, 1980, p 11, col 6), the court held that where a landlord unreasonably withholds his consent to subletting, the tenant could remain in possession or demand to have the lease terminated but could not create a subtenancy, absent consent. In Feldman v Simon Bros. Mgt. Co. (NYLJ, July 9, 1980, p 6, col 6 [an action for a declaratory judgment]), the court granted two tenants in the same building the right to “swap apartments” on a finding that the landlord was unreasonable in withholding the consent sought by the two tenants.
We believe that a careful textual analysis of section 226-b of the Real Property Law points ineluctably to one and only one acceptable interpretation of the remedies available to a tenant when a landlord unreasonably withholds consent to sublet, that is: the tenant may decide to forego the subletting and remain in occupancy or may elect to be released from further leasehold obligations. It may be *78 contended that the law gives but only to take away, at least in a realty market where apartment leases, especially in rent-stabilized apartments, are highly prized and even cherished. Section 226-b affords protection to a tenant who, for one reason or another must, of necessity, either temporarily or permanently give up his or her apartment. It affords a mechanism whereby that tenant may “offset” his or her obligation under the lease through a sublet, or, if the landlord unreasonably withholds his consent to such a subletting, may terminate his or her obligation under the lease. The law, of course, refers to all apartments, controlled and uncontrolled. Mindful of that broad application of the statute, we do not perceive it to sanction what would amount to a form of trafficking in apartments by tenants, an inevitable consequence of permitting a tenant to insist upon subletting where the landlord has refused to consent thereto, albeit “unreasonably”.
For certain tenants who wish to or must absent themselves from their apartments for protracted periods of time, but who intend to return prior to the termination of their leases, our construction of section 226-b of the Real Property Law may constitute a hardship. In such a case, if a landlord unreasonably withholds his consent to sublet, the tenant will have to elect whether to fulfill his obligation under the lease, without offsetting the expense by income derived from subletting the apartment, or request a termination of his obligations under the lease and surrender the apartment. While as noted above we construe section 226-b as affording tenants salutary protection from protracted obligation under a lease where the tenant wishes to or must surrender the premises, we do not interpret the statute as affording the tenant an absolute right to sublet over the landlord’s objection. The rights thus afforded the tenant under section 226-b while circumscribed, are nonetheless material, and they are extended without depriving the landlord of his basic freedom to contract (cf. Rowe v Great Atlantic & Pacific Tea Co., 46 NY2d 62, 68).
It is of course a general rule of statutory construction that a clear and specific legislative intent is required to override the common law (Hechter v New York Life Ins. Co., 46 NY2d 34, 39). Nevertheless, the rules regarding the *79 construction and interpretation of statutes require a finding that whatever rights there may have been before the enactment of section 226-b of the Real Property Law, the statute clearly enunciates a limited right as here set forth, consequent on a finding of landlord’s unreasonable refusal to consent to subletting. “The process of construction necessarily presupposes doubt, obscurity, or ambiguity, and consequently, where a statute is framed in language so plain as to make an explanation superfluous, one will not be attempted” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 71). Further, “The function of the courts is to enforce statutes, not to usurp the power of legislation, and to interpret a statute where there is no need for interpretation, to conjecture about or to add to or to subtract from words having a definite meaning, or to engraft exceptions where none exist are trespasses by a court upon the legislative domain” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 76; see, also, § 73). Furthermore, earlier statutes in pari materia may be considered as indicative of the intent of the Legislature in passing the later law (McKinney’s Cons Laws of NY, Book 1, Statutes, § 222). As noted, section 236 of the Real Property Law (eff May 11,1965) is an obvious forerunner of section 226-b. The intent of the earlier statute is to protect the estate of a deceased tenant from a residential leasehold liability when the landlord unreasonably refuses consent to a sublet. It gives no right to foist a new and different tenant on a landlord, regardless of his unreasonable refusal to accept the proposed subtenant. Section 226-b similarly bestows no such right.
Turning now to the question of use and occupancy awarded to the landlord by Trial Term, the judgment appealed from provided a monetary award for four months’ rent, based upon the rent stated in the lease, plus an additional factor of 30%. Rent Guideline No. 11, effective February, 1980, provided for a 15% vacancy increase plus a 15% increase if a new three-year lease were granted. That presumably was the court’s rationale in arriving at the 30% figure.
Subdivision d of section YY51-5.0 of the Rent Stabilization Law (Administrative Code of City of New York) permits a landlord to offer an apartment that has been va *80 coted at an increased rental varying with the term of the new lease. Here, the apartment was never vacated; certainly no new lease of any type was entered into between the parties. The court acted beyond its power when it granted the 30% increase. Neither the court nor the landlord could unilaterally change the terms of an existing tenancy by increasing the rent (Weitazner v Ingram, NYLJ, July 21, 1980, p 15, col 2). As we observed in Weitazner v Ingram (supra), “It is only by virtue of [the renewal lease that] the appropriate percentage of increase may be ascertained, a different percentage applying depending on the length of the renewal lease”. The landlord here unreasonably withheld consent to a sublet. As a result, his tenant could elect to terminate her lease. That she erroneously proceeded to install a new subtenant ought give the landlord no right to an increase based on a vacancy and execution of a new lease.