CAROL L. CONRAD, Respondent, v THIRD SUTTON REALTY
Co. et al., Appellants.

First Department, June 2, 1981

### APPEARANCES OF COUNSEL

*Robert D. Goldstein* of counsel *(Finkelstein, Borah, Schwartz, Altschuler & Goldstein, P. C.,* attorneys), for appellants.

*Charles D. Bock* of counsel *(James L. Adler, ·Jr.,* and *Lisa S. Rothblum* with him on the brief; *Greenbaum, Wolff & Ernst,* attorneys), for respondent.

*David B. Saxe* of counsel *(Brett, Apfelberg, Epstein & Saxe,* attorneys), for Center for Consumer Advocacy, Inc., *amicus curiae.*

### OPINION OF THE COURT

Ross, J.

On this appeal we are asked to consider the respective rights of a landlord and a tenant, where the former unreasonably withholds consent to sublet the apartment of the tenant. The defendant landlord maintains that his rights include releasing the tenant from the existing obligations under the lease or the tenant can forego the sublease and continue in occupancy. The plaintiff tenant argues that her rights are not so circumscribed. Plaintiff asserts

that she has the option, under these circumstances, to obtain a release or to sublet the apartment to the proposed sublessee. We believe the latter position to be correct.

In a marketplace, such as New York City, where there exists a serious housing shortage, the question before this court has far-reaching ramifications. The answer to this question will ultimately affect many. At issue is the interpretation of section 226-b of the Real Property Law, as amended. Once the landlord has received a tenant's proposal to sublet the subject apartment to an acceptable sublessee and the landlord thereafter fails to provide a reason for denying this request, may the tenant compel the landlord to accept the proposed sublessee? We are in accord that this question must be answered in the affirmative.

The facts in this matter are not in dispute. Plaintiff occupied an apartment at 424 East 57th Street in Manhattan. The building is owned by defendant Third Sutton Realty Company (Sutton) and managed by defendant Kreisel Company, Incorporated (Kreisel).

The plaintiff signed a standard form lease for her apartment on April 29, 1980 for a three-year term, to commence on July 1, 1980 at a rental of $446 per month. The lease contained a standard sublet clause which provided: "18.(A) Assignment, subletting.—Except as provided by § 226-b of the Real Property Law of New York, the Tenant shall not assign the lease, nor sublet the Apartment, or permit the Apartment or any part thereof to be used by any one other than Tenant or members of the immediate family of Tenant, without the prior written consent of Owner in each case, if the Lease is assigned, or if the Apartment is sublet or occupied by anybody other than Tenant or Tenant's immediate family. Owner may, after default by Tenant, collect rent from the assignee, subtenant or occupant, and credit the amount collected to the rent due from Tenant, but no such assignment, subletting, occupancy or collection shall be a waiver by Owner of this agreement by Tenant, or the acceptance of the assignee, subtenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of agreements on the part of Tenant mentioned in the Lease. The consent of

Owner to an assignment or subletting shall not in any way release Tenant from obtaining the consent in writing of Owner to any further assignment or subletting."

During September, 1980, the plaintiff forwarded to Sutton, by registered mail, a letter setting forth her intent to sublet the apartment to one Mary Lou McGlynn. Enclosed with this letter, there was a second letter from McGlynn's employer attesting to her "excellent standing", her length of service, salary and the fact that she held a managerial position in a large corporation headquartered in the City of New York. In addition, this letter enumerated personal references and bank references covering the proposed sublessee.

On September 19, 1980, the managing agent for Kreisel responded. This answer stated in its entirety: "We are in receipt of your September 16th letter in which you request permission to sublet your apartment, #6B, at 424 East 57th Street. That permission will not be granted. However, in lieu of our consent, we will permit you to terminate your lease."

Attempts at compromise were unsuccessful and, accordingly, the instant action was commenced.* Plaintiff served a summons and complaint, seeking a declaration of the rights of the individual parties. Alternatively, plaintiff sought to compel the landlord to permit her to sublet the subject apartment pursuant to section 226-b of the Real Property Law. Contemporaneously, with the service of the summons and complaint, plaintiff served an order to show cause seeking the same relief, and it is from that order and judgment resulting therefrom that the defendant now appeals.

The plaintiff tenant argues that the landlord is required to furnish objective reasons for rejecting the proposed sublessee. She maintains that the common law and present statute (Real Property Law, § 226-b, subds 1, 2) grant her the right to sublet the apartment where the landlord fails to provide a reason or reasons for refusing the tenant's request to sublet.

---

* Proposed sublessee actually moved into the apartment on or about November 1, 1980, and presently resides therein.

The defendant landlord apparently concedes that there may have been an unreasonable withholding of his consent in that he gave no reason for rejecting the sublessee. He argues, however, that the only options available are to release the plaintiff tenant from the obligations of the lease or the tenant may remain in the apartment at the tenant's option.

Although the subject apartment was subsequently sublet to the proposed sublessee, and this sublessee now resides therein, this court will not dismiss this appeal as moot. The controversy before us is of sufficient public importance and will, in all likelihood, materialize again so that full appellate review is warranted at this time. *(Matter of Storar, 52 NY2d 363.)*

Originally, at common law, the tenant had an unrestricted right to sublet absent any prohibition to the contrary. Leases, thereafter, attempted to arbitrarily limit this right of the tenant. Language was developed which would inhibit tenants by requiring the consent of the landlord to sublet, which would not be unreasonably withheld. With the development of the housing shortage in New York, the effectiveness of the remedies available to the tenant became restricted and the bargaining power shifted almost entirely in favor of the landlords. It was a result of this unequal bargaining power that gave rise to section 226-b of the Real Property Law. The sponsor of this legislation stated, in his legislative memorandum: "Housing shortages and inequities to tenants may be alleviated by this bill through the allowance of a tenant to sublease his premises when they are not in his use." (NY Legis Ann, 1975, p 305.) The statute in its amended form now provides in pertinent part:

"§ 226-b. Right to sublease * * *. 1. A tenant renting a residence in a dwelling having four or more residential units shall have the right to sublease * * * his premises, subject to the written consent of the landlord given in advance of the sublease * * * Such consent shall not be unreasonably withheld. *If the landlord unreasonably withholds consent for such sublease * * * the landlord must release the tenant from the lease upon request of the tenant.*

"2. The tenant shall inform the landlord of his intent to sublease * * * by mailing a notice of such intent by registered or certified mail. Such request shall be accompanied by the written consent thereto of any co-tenant or guarantor of such lease and a statement of the name, business and home address of the proposed sublessee * * * . Within ten days after the mailing of such request, the landlord may ask the sender thereof for additional information as will enable the landlord to determine if rejection of such request shall be unreasonable. Within thirty days after the mailing of the request for consent, or of the additional information reasonably asked for by the landlord, whichever is later, the landlord shall send a notice to the sender thereof of his consent *or, if he does not consent, his reasons therefore. Landlord's failure to send such a notice shall be deemed to be a consent to the proposed subletting* * * *. If the landlord consents, the premises may be sublet * * * in accordance with the request, but the tenant thereunder, shall nevertheless remain liable for the performance of tenant's obligations under said lease." (Emphasis supplied.)

This statute as originally enacted provided, in the last sentence of subdivision 1, that the landlord who unreasonably withheld consent "must agree to release the tenant from the lease or accept the sublessee." This language came under immediate criticism. It was argued that the rights of the tenant to be released from the provisions of an existing lease should be automatic and not be dependent upon the consent of the landlord. On May 28, 1975, the Secretary of State wrote to the Governor's Counsel: "It would appear to me that provision with respect to the release of the tenant from the lease where the landlord unreasonably withholds consent is poorly drawn. If the landlord is found by a court —which only could determine the issue—that the landlord has unreasonably withheld consent, it should have been simply provided that the tenant is released from the lease either at the time of removal or at the time of the determination, rather than to call for the act of the landlord to *agree* to such release." (Emphasis in original.)

On June 3, 1975, subdivision 1 was amended by deleting the above-quoted portion of the last sentence and substi-

tuting in its place, the phrase, "the landlord must release the tenant from the lease upon [the] request of the tenant." (L 1975, ch 548.)

In addition, subdivision 2 of section 226-b of the Real Property Law originally provided that: "Upon receipt of such notice [to sublet] the landlord must notify the tenant of his consent or lack thereof by registered or certified mail within thirty days. If after the thirtieth day no such notice is mailed, the landlord is deemed to have consented to the sublease." This section was also amended on June 3, to provide that when the landlord refuses to consent to a sublease, the landlord shall state "his reasons" for this refusal. The failure to provide "such a notice [of his reasons] shall be deemed to be a consent to the proposed subletting."

Accordingly, it becomes clear that under both sections, as amended, the release of the tenant from the lease becomes automatic at the option of the tenant and the landlord is required to set forth his reasons for refusing the tenant's request for consent to sublease. The landlord's failure to give such reasons is deemed to be a consent to the sublease. Therefore, under subdivision 1, the automatic release is at the tenant's option and only covers the question of surrender of the lease and vacating the premises, while subdivision 2 gives the tenant an additional remedy by requiring the landlord's refusal to consent to a sublease to contain reasons therefor. It is obvious, from its legislative history, that section 226-b of the Real Property Law was adopted by the Legislature for the purpose of assisting tenants during the period of housing shortage. To interpret the section as defendant would have us do would result in injury to the plaintiff tenant's position, which was not contemplated by the Legislature. In fact, this result would be an incentive for landlords to unreasonably withhold their consent to a sublease for the purpose of obtaining a vacancy for rerental with an attendant increase. If the rights of tenants were limited to merely being released from the lease after a rejection of the sublease, as argued by the landlord, then the statutory mandate of requiring the landlord not to unreasonably withhold con-

sent would be meaningless. This we are not prepared to sanction.

The theory espoused by the landlord relies upon the recently decided case of *Lexann Realty Co. v Deitchman* (107 Misc 2d 74, 77) wherein that court held: "We believe that a careful textual analysis of section 226-b of the Real Property Law points ineluctably to one and only one acceptable interpretation of the remedies available to a tenant when a landlord unreasonably withholds consent to sublet, that is: the tenant may decide to forego the subletting and remain in occupancy or may elect to be released from further leasehold obligations." The court went even further when it declared (p 78): "Mindful of that broad application of the statute, we do not perceive it to sanction what would amount to a form of trafficking in apartments by tenants, an inevitable consequence of permitting a tenant to insist upon subletting where the landlord has refused to consent thereto, albeit 'unreasonably'." (See, also, *Pacer Realty Assoc. v Lasky*, NYLJ, Jan. 27, 1981, p 5, col 3.) In *Lexann (supra)*, the court recognized that, while holding for the landlord, its restriction on the right of a tenant to sublet created a dilemma. The court observed (p 78) that "[f]or certain tenants who wish to or must absent themselves from their apartment for protracted periods of time, but who intend to return prior to the termination of their leases, our construction of section 226-b of the Real Property Law may constitute a hardship."

By restricting the rights of the tenant, the Appellate Term not only unnecessarily narrowed the interpretation of subdivision 1 of section 226-b of the Real Property Law but totally ignored the mandate of subdivision 2 of that statute, which directs consent to the proposed subletting where the landlord fails to furnish reasons for his denial. This court agrees with the analysis of Justice ASCH, in *Pacer Realty Assoc. v Lasky (supra)*, wherein Justice ASCH (concurring on restraint of *Lexann, supra*) indicated that the right of the tenant to sublet at common law, was unfettered. He interpreted section 226-b of the Real Property Law, as does this court, as giving a tenant two remedies, one being the option, *in the tenant,* to surrender the lease under sub-

division 1, and the other being the remedy of compelling the landlord to accept the bona fide sublease under subdivision 2. To interpret this section as defendant would have us do, ignores the fact that this legislation was passed to increase a tenant's rights and provide him with a modicum of negotiating capacity during a period of housing shortages. This court cannot disregard the legislative intent behind this statute. One of the sponsors of this legislation, Senator Halperin, stated when the bill was submitted, that: "Housing shortages and inequities to the tenants may be alleviated by this bill through the allowance of a tenant to sublease his premises when they are not in use".

It is obvious that section 226-b of the Real Property Law, as amended, was not meant to give a tenant a meaningless right to surrender his occupancy during a period of serious housing shortages, when in fact, he can obtain a bona fide sublease. To deny such bona fide subleasing right would indeed make a mockery of the statute. The tenant was given a valuable right and asset, to offset an owner's ability to obtain vacancies for the purpose of reletting, it being obvious that with each reletting a higher rental is obtained for the subject apartment. To follow the reasoning in *Lexann* (107 Misc 2d 74, *supra*), would indeed create inequities in favor of this defendant which are clearly contrary to the legislative intent.

Therefore, this court finds that the landlord in failing to give any valid reason for rejecting the sublease herein, is deemed to have granted consent, pursuant to section 226-b of the Real Property Law. Accordingly, the order and judgment (one paper) of Supreme Court, New York County (DONTZIN, J.), entered on October 30, 1980, which declared, *inter alia*, that plaintiff is entitled to sublease her apartment to the proposed subtenant should be affirmed, without costs.

SILVERMAN, J. (concurring). I agree that where the landlord fails to consent to a sublet and fails to send a notice which includes his reasons therefor, the landlord is deemed to consent to the proposed sublet. I base this on the language of subdivision 2 of section 226-b of the Real Property Law.

The statement of reasons serves a useful purpose in giv-

ing the tenant a basis for judging whether the landlord's withholding of his consent is unreasonable and protecting the tenant against the landlord's afterthoughts.

However, I prefer not to express an opinion as to whether the tenant is limited to being released from the lease upon request in the situation in which the landlord does state his reasons for withholding consent, but it is then determined that the withholding is unreasonable (in a situation of course in which the lease in terms provides that the tenant may not sublet without the landlord's consent, and there is no provision in the lease that the consent shall not unreasonably be withheld). That situation is not now before us.

SULLIVAN, J. P., and CARRO, J., concur with ROSS, J.; SILVERMAN and BLOOM, JJ., concur in a separate opinion by SILVERMAN, J.

Order and judgment (one paper), Supreme Court, New York County, entered on October 30, 1980, affirmed, without costs and without disbursements.