Stella GUERRA, Petitioner,

v.

DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent.

Shannon & Luchs Company, Intervenor.

No. 84–687.

District of Columbia Court of Appeals.

Argued Feb. 19, 1985.

Decided Dec. 5, 1985.

Paul S. Penczner, Washington, D.C., for petitioner.

Richard B. Nettler, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for respondent.

Richard W. Luchs, Washington, D.C., for intervenor.

Before NEBEKER, FERREN and TERRY, Associate Judges.

TERRY, Associate Judge:

Petitioner seeks review of a decision of the Rental Housing Commission that held certain rent increases effected by her landlord to be proper under the Rental Housing Act of 1980, D.C. Code §§ 45–1501 through 45–1597 (1981), and dismissed her claims for treble damages and a rollback in the rent. Among her several assignments of error, petitioner contends that the Commission erred in allowing a vacancy increase in the rent ceiling under D.C. Code § 45–1524(a) when one tenant terminated her lease and another began her tenancy under a new lease, but petitioner, as subtenant to both tenants, never surrendered possession of the apartment. We agree and reverse, and therefore do not reach petitioner's other claims of error.

I

In 1979 Shannon & Luchs, the landlord-intervenor, leased an apartment in the Columbia Plaza Apartments to Marian Clark. In June 1981 Clark subleased the apartment on a month-to-month basis to petitioner Stella Guerra for $379.50 per month. Pursuant to the sublease agreement, Guerra made her rent payments directly to Shannon & Luchs. The payments were never more than the monthly rental that Shannon & Luchs charged Clark.

A few months later Shannon & Luchs raised the rent to $418 per month, effective November 1, 1981, and Guerra began paying that amount. That increase was made pursuant to D.C. Code § 45–1517(b) (1981), which provides that a landlord may annually increase the rent ceiling [1] for an apartment by a percentage equal to the most recent annual increase in the Consumer Price Index, up to a maximum of ten percent. The 1981 increase is not challenged in this appeal.

On March 2, 1982, Clark gave notice to Shannon & Luchs of her intention to terminate the lease on March 31. Shannon & Luchs then leased the apartment to Eva Csatary, and Csatary in turn subleased it back to Guerra, who remained in possession of the apartment for the entire time. This sublease agreement was identical to the prior one; both were written on Shannon & Luchs "Sub-Lease Agreement" forms.

With the change of tenants, Shannon & Luchs increased the rent to $466 per month, effective April 1, 1982. This increase, known as a "vacancy increase," was based on D.C. Code § 45–1524(a) (1981), which provides that the landlord may adjust the rent ceiling "[w]hen a tenant vacates a rental unit on his or her own initiative...." It is this April 1982 rent increase which is at the heart of this case.

Seven months later, on November 1, 1982, Shannon & Luchs imposed another rent increase, raising the rent to $507 per month. This cost-of-living increase, like the one in November 1981, was based on D.C. Code § 45–1517(b). Guerra contends

---

1. The rent ceiling is the maximum amount which a landlord may charge a tenant for a rental unit, computed by a statutory formula. The rent actually charged may be equal to or less than the rent ceiling, but it may not be greater. See D.C. Code §§ 45–1503(24), 45–1517(a) (1981).

that because the April 1982 increase was improper, the November 1982 increase was also improper because it was calculated on the basis of the April increase.

On January 14, 1983, Csatary issued an eviction notice to Guerra, giving her ninety days to vacate the apartment.[2] Instead of moving out, however, Guerra filed a complaint with the Rental Accommodations Office against both Csatary and Shannon & Luchs. The complaint charged that both the April 1982 and the November 1982 rent increases had been implemented in violation of the Rental Housing Act. She maintained that the April increase was in violation of D.C.Code §§ 45–1524 (permitting a rent ceiling increase only after a vacancy), 45–1519(g) (prohibiting the implementation of a rent increase within 180 days after a prior increase), 45–1516(e) (requiring the landlord to file an amended registration statement within thirty days after a rent increase), and 45–1595(b) (requiring thirty days' advance notice of a rent increase). The November increase, she asserted, was also improper because it was based upon the invalid April increase. Finally, she claimed that Csatary's eviction notice was invalid because Csatary did not have a freehold interest in the apartment, as D.C.Code § 45–1561(d) requires. Pursuant to D.C. Code § 45–1591(a), the complaint prayed for treble damages and a rollback of the rent.

A hearing was held before a Rental Housing Commission hearing examiner,[3] and after the hearing the parties submitted additional documentary evidence and further arguments. The hearing examiner then issued her decision, ruling that Csatary's eviction notice was invalid but that the rent increases were proper. The examiner found that Csatary did not have a freehold interest in the apartment and thus was not entitled to evict Guerra under D.C. Code § 45–1561(d). Csatary did not appeal from this ruling, and it is not contested here.[4]

With respect to the vacancy increase of April 1, 1982, the examiner concluded that Guerra, as a subtenant, had no greater rights under the lease than Clark, the tenant. She ruled, therefore, that when Clark vacated the premises, Guerra was deemed to have vacated them also, and that the vacancy increase was proper under D.C. Code § 45–1524(a). The examiner made no ruling with regard to Guerra's assertions that the increase was in violation of D.C. Code §§ 45–1519(g), 45–1516(e), and 45–1595(b).

Guerra appealed to the Rental Housing Commission, raising again all of the issues stated in the complaint. The Commission held, however, that there were only two issues presented: (1) whether there was a vacancy under section 45–1524(a), entitling Shannon & Luchs to impose a vacancy increase, and (2) whether section 45–1519(g), which provides that no rent increase may be implemented within 180 days after a prior increase, prohibited the imposition of the vacancy increase in this case.

On the first issue, two of the Commissioners agreed with the hearing examiner that Guerra's rights were the same as Clark's, so that when Clark vacated the apartment, Guerra was deemed to have vacated it also. One Commissioner dissented on the ground that there was no vacancy because Guerra had never actually left the apartment. He reasoned that landlords are allowed a vacancy increase under section 45–1524 only to recover rent losses due to the vacancy. Therefore, when a landlord, as in this case, suffers no rent loss

---

2. D.C. Code § 45–1561(d) (1981) provides in part:

A natural person with a freehold interest in the rental unit may recover possession of a rental unit where he or she seeks in good faith to recover possession of such rental unit for his or her immediate and personal use and occupancy as a dwelling. The landlord shall serve on the tenant a 90–day notice to vacate. . . .

3. The transcript of the hearing is not part of the record on appeal.

4. Csatary is not a party to the proceedings in this court.

due to a vacancy, the landlord is not entitled to a vacancy increase.

The majority of the Commission also ruled that the vacancy increase was not in violation of section 45–1519(g). The dissenting Commissioner, pointing out that the April 1982 vacancy increase had followed the November 1981 cost-of-living increase by only 150 days, concluded that it was premature as well as invalid:

> The vacancy rent increase should not have been imposed at all. The majority compounds its error by permitting it earlier than the law allows.

## II

■ The principal issue presented on this appeal is whether a landlord may implement a vacancy increase in the rent ceiling for a rental unit under D.C.Code § 45–1524(a) when there has been a change in tenants, but the rental unit has never actually become vacant because a subtenant, common to both tenants, has remained in possession of the rental unit. We hold that no vacancy increase can be made under these circumstances.

D.C.Code § 45–1524(a) (1981) provides in pertinent part:

> When a tenant vacates a rental unit on his or her own initiative ... the rent ceiling may, at the election of the landlord, [be increased by] 10 percent....[5]

On the basis of this provision, Shannon & Luchs increased the rent ceiling as well as the rent of the Guerra apartment, effective April 1, 1982, even though the apartment was never vacant for a single day during the change in tenants.

It is a basic rule of statutory construction that courts must follow the plain and ordinary meaning of a statute because that is the meaning intended by the legislature. *Swinson v. United States,* 483 A.2d 1160, 1163 (D.C.1984); *In re Estate of Glover,* 470 A.2d 743, 749 (D.C.1983); *see Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). Although the word "vacate" is nowhere defined in the Rental Housing Act, its ordinary meaning, as applied to a dwelling, is "[t]o move out; to make vacant or empty; to leave, especially, to surrender possession by removal; to cease from occupancy." BLACK'S LAW DICTIONARY 1388 (5th ed. 1979); *cf. Wayne Tenants Council v. Mayor of Wayne,* 180 N.J.Super. 128, 136, 433 A.2d 844, 848 (1981) (under a local ordinance, "[a] vacancy is defined ... 'to have occurred only if said unit has become vacant and *unoccupied* by reason of the fact that ... any tenant ... [has] voluntarily surrendered possession *and removed therefrom*'" (emphasis added)). In this case, although the tenant-sublessor Clark surrendered her lease with Shannon & Luchs, the sublessee Guerra[6] never moved out or gave up possession of the apartment; consequently, it never became empty or unoccupied. We hold that because there was no actual vacancy, there could be no vacancy increase under D.C.Code § 45–1524(a).[7]

---

5. Under the Rental Housing Act, the term "'[t]enant' includes a ... subtenant" like Guerra. D.C. Code § 45–1503(30) (1981). This provision "make[s] clear that an individual who has paid the applicable rent that has been knowingly accepted by a landlord is included in the provisions of this act." COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON HOUSING AND ECONOMIC DEVELOPMENT, REPORT ON BILL No. 3–321, "RENTAL HOUSING ACT OF 1980," at 3 (October 23, 1980).

6. From the standpoint of Shannon & Luchs, both Clark and Guerra were "tenants" within the meaning of the Rental Housing Act. *See* D.C. Code § 45–1503(30) (1981).

7. The landlord's reliance on *Ocean Fifth Realty Corp. v. Stern,* 202 Misc. 336, 109 N.Y.S.2d 92 (Mun.Ct.1951), is misplaced for at least one reason: in that case the rental unit became unoccupied when one tenant left before the next tenant moved in. *See Lexann Realty Co. v. Deitchman,* 107 Misc.2d 74, 437 N.Y.S.2d 835 (App.Term 1980) (no vacancy when tenant moved out and subtenant immediately moved in), *rev'd on other grounds,* 83 A.D.2d 540, 441 N.Y.S.2d 472 (1981); *520 East 81st Street Associates v. Lenox Hill Hospital,* 74 Misc.2d 438, 441, 345 N.Y.S.2d 895, 898 (Civ.Ct.1973) (no vacancy when tenant remained the same and subtenants changed), *modified on other grounds and aff'd,* 76 Misc.2d 892, 351 N.Y.S.2d 849 (App.Term 1974).

Our reading of the statute is supported by another basic rule of statutory construction: that statutory provisions must not be viewed in isolation, but together with related provisions. *Carey v. Crane Service Co.,* 457 A.2d 1102, 1108 (D.C.1983); *Howard v. Riggs National Bank,* 432 A.2d 701, 709 (D.C.1981); *Citizens Ass'n of Georgetown v. Zoning Commission,* 392 A.2d 1027, 1033 (D.C.1978) (en banc). There are several related provisions that bear on our decision.

One of the stated purposes of the Rental Housing Act is "[t]o prevent the erosion of moderately priced rental housing while providing landlords and developers with a reasonable rate of return on their investments." D.C. Code § 45–1502(5) (1981). This language plainly expresses the intent of the legislature to balance the interests of the landlords and tenants against each other. That purpose would not be served if the Act were construed to provide either the landlord or the tenant with a windfall. For that reason, the rent or rent ceiling may be increased under the Act only when there is an increased cost to the landlord which justifies the increase. *See* D.C. Code §§ 45–1517(b) (allowance for annual cost-of-living increase), 45–1521 (allowance for cost of capital improvements), 45–1522 (allowance for increase in services), 45–1525 (allowance for substantial rehabilitation).[8]

 Given this statutory scheme, we are persuaded that D.C. Code § 45–1524(a), allowing a vacancy increase, applies only when there has been some additional cost to the landlord that would justify the increase. Although section 45–1524(a) does not make clear what kind of cost associated with a vacancy would justify an increase, other provisions do. For example, under section 45–1523, a landlord may seek an increase in the rent ceiling on the ground of hardship. Among the factors which may justify a hardship increase is "vacancy losses." D.C. Code § 1523(b)(1)(E) (1981).

" 'Vacancy loss' means the amount of rent not collectable due to vacant units in a housing accommodation." D.C. Code § 45–1503(32) (1981). Reading the entire Act as a whole, we conclude that section 45–1524(a) is intended to allow a landlord to increase the rent ceiling for a rental unit only after it has in fact become vacant. Unless there is an actual vacancy, the landlord suffers no vacancy loss; and without a vacancy loss, an increase in the rent ceiling under section 45–1524(a) would be a windfall to the landlord.

We are mindful of the well-established principle that courts should defer to an agency's interpretation of the statute which it has the duty to enforce, so long as that interpretation is reasonable. *Investment Co. Institute v. Camp,* 401 U.S. 617, 626–627, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367 (1971); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *1880 Columbia Road Tenants' Ass'n v. District of Columbia Rental Accommodations Commission,* 400 A.2d 333, 337 (D.C.1979). Such deference, however, is unwarranted when the agency's construction is plainly inconsistent with the statute, as it is here. *DeLevay v. District of Columbia Rental Accommodations Commission,* 411 A.2d 354, 359 (D.C.1980) (citing cases); *see Haugness v. District Unemployment Compensation Board,* 386 A.2d 700, 702–703 (D.C.1978). We therefore attach no weight to the Commission's interpretation of section 45–1524(a), on which it based its ruling that the vacancy rent increase in this case was permissible.

The Commission attempts to avoid our ruling by arguing that Csatary, not Shannon & Luchs, was Guerra's landlord, and that Csatary was exempt from the requirements of the Rental Housing Act. That argument must be rejected out of hand. First, there can be no question that Shannon & Luchs was Guerra's landlord. Un-

---

8. A rent increase is also allowed in a few situations when there will be no resulting windfall to either the landlord or the tenant. *See* D.C. Code §§ 45–1523 (allowance for hardship), 45–1526 (allowance when seventy percent of tenants agree to a specified increase).

der the Rental Housing Act, " '[l]andlord' means an owner, lessor, sublessor, assignee, *any agent thereof,* or *any other person receiving or entitled to receive rents* or benefits for the use or occupancy of any rental unit...." D.C. Code § 45–1503(12) (1981) (emphasis added). It is undisputed that Shannon & Luchs not only was the agent of the owner of the apartment complex but also received the rent payments from Guerra. We cannot escape the obvious conclusion that Shannon & Luchs and Csatary were *both* Guerra's landlords within in the meaning of the Act.[9] Second, Csatary, as Shannon & Luchs' tenant, was not exempt from the provisions of the Act. D.C. Code § 45–1517(a) (1981) makes that clear: "No tenant [acting as a sublessor] may sublet a rental unit at a rent greater than that tenant pays the landlord." [10]

When there has been no vacancy in fact, there can be no justification for a vacancy increase under section 45–1524(a). If we upheld the vacancy increase in this case, we would be granting the landlord a windfall, in clear violation of the legislative purpose behind the Rental Housing Act. We therefore hold that the April 1982 vacancy increase was improper, and consequently that the November 1982 increase, which was calculated on the basis of the April 1982 increase, was also improper. The decision of the Rental Housing Commission is reversed, and this case is remanded to the Commission for further proceedings consistent with this opinion.

*Reversed and remanded.*

**9.** The Commission's claim that Shannon & Luchs cannot be Guerra's landlord because it has no contractual relationship with her is both factually and legally erroneous. The record makes clear that there was a contractual relationship between them. Moreover, this court has recently rejected the argument that there cannot be a landlord-tenant relationship under the Act when there is no contractual relationship between the parties. *Administrator of Veterans Affairs v. Valentine,* 490 A.2d 1165, 1168–1170 (D.C.1985).

**10.** The Commission's argument that Csatary is exempt under D.C. Code § 45–1516(a)(3) (1981) also lacks merit. That provision applies not to landlords (or tenant-sublessors) but to rental units. Under section 45–1516(a)(3), only apartments in buildings containing four or fewer rental units are eligible for exemption, provided certain other requirements are met. Because Columbia Plaza contains well over 100 units, no unit in the building can qualify for exemption. *Feldman v. District of Columbia Rental Housing Commission,* 501 A.2d 781, 784 (D.C.1985).