Albert KITCHINGS, et al., Petitioners,

v.

DISTRICT OF COLUMBIA RENTAL
HOUSING COMMISSION,
Respondent.

No. 89–704.

District of Columbia Court of Appeals.

Submitted Nov. 15, 1990.
Decided March 26, 1991.

Bernard A. Gray, Sr. filed a brief, Washington, D.C., for petitioners.

Before ROGERS, Chief Judge, and STEADMAN, Associate Judge, and MACK, Senior Judge.

STEADMAN, Associate Judge:

This is an appeal by two tenants from a decision of the Rental Housing Commission ("RHC") under the Rental Housing Act of 1980 (the "Act"), D.C.Code §§ 45–1501 *et seq.* (1981). The RHC upheld a refund to the tenants of certain rent overcharges prior to February 28, 1983. As we view it, the principal issue on appeal is whether the RHC properly held that a voluntary rental increase agreement (the "70% agreement") entered into by the tenants pursuant to D.C.Code § 45–1526 (1981)[1] precluded any claim to rental refunds subsequent to February 28, 1983, the effective date of the agreement.[2] We remand for further proceedings.

The tenants claim the agreement was ineffective on two grounds. First, they invoke our decision in *Guerra v. District of Columbia Rental Housing Commission*, 501 A.2d 786 (D.C.1985). As the RHC phrased the tenants' argument, "since the tenants were being charged im-

1. Under that section, if seventy percent of the tenants of a housing accommodation agree to have the rent ceiling for their rental units adjusted by a "specified percentage," the rent administrator shall immediately certify approval of the increase, without regard to any other rent ceiling limitations that might apply. The section requires that the agreement include "the specific amount of the increased rent each tenant will pay." D.C.Code § 45–1526 (1981).

2. The record does not contain the agreement itself, but only the notification form by the landlord to the tenants of its effective date. The form lists the "legal rent ceiling," "current rent charged," "new rent ceiling," and "new rent charged," as well as the percentage increase of seven percent. The "legal rent ceiling" shown, however, is that found by the RHC, in ordering rental refunds, to have been higher than the authorized rent ceiling at the time.

proper rents when the 70% agreement was entered into, the 7% [rent increase] agreed to there was built upon an illegal foundation and, as in the *Guerra* case, it must be invalidated." Broadly, the tenants apparently assert that whenever rent is being charged at an improper level, *any* rent increase is ipso facto invalid.[3] This is a misreading of *Guerra.* In that case, the landlord attempted to impose an increase authorized whenever a vacancy occurred, D.C.Code § 45–1524 (1981), in a situation where no vacancy in fact existed. Subsequently he imposed an automatic percentage increase based upon the improper rental resulting from the wrongful vacancy increase. As the RHC correctly noted, we simply held that since the first increase was improper and the second increase built upon the first one, the *amount* of the second increase was also improper, not that no increase whatever, even if properly calculated, could be imposed.[4]

■ Second, the tenants argue that the agreement is invalid, in whole or in part,[5] because at the time the agreement was entered into, the tenants were paying rental in excess of the authorized ceiling, and hence the tenants were acting on the basis of incorrect information in agreeing to an increase of a "specified percentage." See note 1 *supra.* The RHC did not squarely address this argument,[6] apparently because of its belief that the tenants had conceded that the agreement had been legally en-

tered into. We are unable to determine the basis for this belief. The record indicates that the tenants repeatedly challenged the validity of the agreement on this ground. In their motion for reconsideration of the hearing examiner's decision, they set forth that they "argued at the hearing that the 70% agreement is invalid since the base rent used to make the calculations was incorrect and the [tenants] could not make a knowingly intelligent and reasonable voluntary choice with incorrect base rent information." Likewise, in their notice of appeal to the RHC, they listed as one of their major contentions that "a voluntary agreement cannot be voluntary unless all relevant facts upon which the decision is based are disclosed to the person making the decision." In their brief to us, petitioners flatly assert that the statement in the RHC order that the tenants conceded the validity of the agreement is "incorrect."[7]

We think this case must be remanded to the RHC for further consideration of this argument of the tenants. To some extent, it may be fact-specific, and an agency in its findings must include a "concise statement of the conclusions upon each contested issue of fact." D.C.Code § 1–1509(e) (1987). Furthermore, we deal here with an issue relating to implementation of the Act which it would be inappropriate to resolve "without the benefit of a reasoned interpretation by the agency charged with the administra-

3. The tenants make the same argument in attacking the computation by the hearing examiner, upheld by the RHC, of the correct rental ceiling prior to the 70% agreement. This argument was properly rejected by the RHC, which noted that "the hearing examiner performed a rent history and invalidated all improper increases and correctly allowed for all proper increases so that the ceiling he arrived at for each of the tenants when they moved in was cleansed of invalid increases." The tenants also attack before us the rental ceiling calculation on the apparent basis that the registration forms filed by the landlord were erroneous. However, the RHC affirmed the hearing examiner's finding that the landlord had been properly registered, and we see no basis in the record before us to contest this conclusion.

4. In *Guerra,* we remanded the case to the RHC "for further proceedings consistent with this opinion."

5. For example, it may be that the agreement, even if fundamentally valid, would permit an increase of seven percent based only on the then correct rental ceiling, rather than the improper rental actually then being charged.

6. The RHC did note that the tenants agreed to the increase although the rents they were paying at the time were above the legally chargeable amounts, and that the landlord had the right to rely on the agreement in setting the ceilings prospectively. This, however, seems to postulate the validity of the agreement.

7. It is true that we do not have a transcript of the hearing before the RHC. However, its order states that the tenants "had conceded that point," apparently referring to a point in time prior to the proceedings before the RHC.

tion of the statute." *Wells v. District of Columbia Dep't of Employment Services,* 513 A.2d 235, 242 (D.C.1986); *see also Rafferty v. District of Columbia Zoning Commission,* 583 A.2d 169, 176 (D.C.1990) ("we think it inappropriate to decide the issue of first impression urged upon us by the District without the benefit of findings by the Commission and without an expression of the Commission's views on the legal question presented"). Accordingly, we remand the case for further proceedings consistent with this opinion.

*So ordered.*