**TENANTS OF 5912 14TH STREET, N.W., Petitioners,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent,**

**Mellon Property Management, Intervenor.**

No. 92–AA–4.

District of Columbia Court of Appeals.

Argued Nov. 19, 1993.

Decided Nov. 21, 1994.

John K. Lunsford, Washington, DC, for petitioners.

Patricia Wilkins Bobo, Washington, DC, for intervenor.

John Payton, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, filed a statement in lieu of brief, for respondent.

Before TERRY, FARRELL, and KING, Associate Judges.

TERRY, Associate Judge:

This case involves a landlord's effort to obtain a rent increase through two hardship petitions. The case raises two issues: first, whether the tenants may, in an appeal from the granting of a hardship petition, challenge rent increases obtained under a prior hardship petition that ultimately was withdrawn, and second, how a rent increase granted under a hardship petition should be calculated. We affirm in part, reverse in part, and remand.

I

The landlord, Mellon Property Management, filed two hardship petitions for rent ceiling increases at an apartment house which it owns at 5912 14th Street, N.W.[1] The facts are best summarized by describing the later petition first.

On July 29, 1987, the landlord submitted to the Rent Administrator hardship petition (HP) 20,382, seeking a rent increase of twenty-four percent. On May 16, 1988, HP 20,382 was administratively dismissed without prejudice because of a discrepancy in the application: the landlord had claimed more than $7,000 in interest expenses but did not list any encumbrances in the petition. The landlord filed a motion for reconsideration, which was granted on June 17.[2] A few months later an auditor's report concluded that the requested increase was unwarranted.[3] After the landlord filed exceptions and objections to the auditor's report, a hearing examiner held a two-day hearing on those objections.

The other hardship petition involved in this case, HP 20,100, was filed by the landlord more than a year earlier. HP 20,100 has a murky history in the record.[4] What is clear, however, is that the Rental Housing Commission (RHC) issued a decision and order in HP 20,100 on July 15, 1988. According to that decision and order, which is in the record, the landlord filed HP 20,100 on February 28, 1986, seeking a rent increase of forty-five percent. On June 1, 1986, the landlord conditionally implemented a forty percent in-

---

1. Although D.C.Code § 45–2516(a) (1990) imposes a ceiling on the amount of rent that a landlord may charge, section 45–2516(c) of the Code permits the landlord to seek an increase in the rent ceiling by filing a hardship petition. Hardship petitions are governed by section 45–2522, which sets out a formula that enables a landlord to receive a return of up to twelve percent on net equity.

2. The landlord explained the discrepancy by showing that it had paid off the mortgage, thus accounting for the existence of an interest expense without any present encumbrance.

3. The landlord asserts in its brief that the auditor found the hardship petition lacking in merit because the agency had lost "a substantial portion" of its supporting documentation.

4. The record before us relates only to HP 20,382, but it does contain various decisions and orders relating to HP 20,100, most of which were presented as exhibits at the hearing in HP 20,382 in February and March of 1989.

crease, but three months later, on September 12, the Rent Administrator reduced the increase to seventeen percent on the ground that the notice to the tenants was defective. After the landlord appealed, the RHC affirmed in part, reversed in part, and remanded the case to the Rent Administrator. On December 7, 1988, the Rental Accommodation and Conversion Division (RACD) of the Department of Consumer and Regulatory Affairs [5] granted the landlord's motion to withdraw the hardship petition and dismissed it without prejudice.[6]

At the close of the hearing on HP 20,382 on March 1, 1989, the tenants moved to dismiss the hardship petition "because the rent ceilings submitted in the petition were improper." The hearing examiner initially ruled that the seventeen percent increase authorized under HP 20,100 was no longer valid because, on remand after appeal, the landlord had withdrawn that petition. However, after the landlord filed a motion for reconsideration, which the tenants did not oppose, the hearing examiner rescinded that ruling. He concluded that his invalidation of the rent ceiling increase allowed under HP 20,100 was erroneous because it was beyond the jurisdictional scope of the hearing in HP 20,382, which the examiner said "was limited to the exceptions and objections that were filed to the [auditor's] report," and because the tenants had failed to oppose the landlord's motion to reconsider. The landlord's request for a rent ceiling increase sufficient to provide a twelve percent return on equity was granted.[7]

The tenants appealed to the RHC, which affirmed the RACD's decision. The tenants then filed the instant petition for review of the RHC's final order. We reverse in part and remand.

## II

We first consider the effect of the landlord's withdrawal of HP 20,100 on the seventeen percent rent ceiling increase granted by the Rent Administrator in that case. The tenants argue that that seventeen percent increase should not be taken into account when calculating the twenty-four percent increase under HP 20,382 because the first increase was nullified when the landlord withdrew HP 20,100 after the matter was remanded to the Rent Administrator by the RHC. The landlord responds with two arguments. First, it contends that the hearing examiner (on reconsideration) and the RHC correctly ruled that the tenants could not raise *any* issue relating to HP 20,100—including a challenge to the seventeen percent rent ceiling increase—for jurisdictional reasons. Second, the landlord maintains that the withdrawal of HP 20,100 affected only those issues that had been expressly remanded to the Rent Administrator for further proceedings. For these reasons, the landlord says, it is improper for the tenants to "challenge old rent ceilings."

■ The landlord misses the point. The tenants are not trying to relitigate HP 20,100. Their argument addresses the more fundamental fact that the landlord withdrew not the *appeal* of HP 20,100, but *HP 20,100 itself.* The tenants correctly conclude (and the hearing examiner, in his initial ruling, correctly concluded) that because the landlord withdrew HP 20,100 while it was pending before the Rent Administrator on remand, the rent ceiling increase authorized in HP 20,100 is a nullity.

The RHC, in the order now before us on review, based its analysis on the assumption that the landlord had withdrawn only the administrative appeal in HP 20,100. This assumption was erroneous. The record

---

**5.** Because of an administrative reorganization, the RACD had assumed the duties and functions of the Rent Administrator.

**6.** The motion to withdraw was filed with the RACD while the appeal was pending before the RHC. It is significant, as we shall discuss, that it was the hardship petition itself, not just the appeal to the RHC, that was dismissed.

**7.** The hearing examiner's finding was based in part on a finding that the landlord's claim of more than $7,000 in mortgage interest was supported by "sufficient documentation to substantiate the claimed mortgage expense," which the examiner then listed in detail. The examiner added that "inclusion of the mortgage interest expense is mandated" by D.C.Code § 45–2522(b)(1)(G).

makes clear that the landlord withdrew not its appeal in HP 20,100, but the hardship petition itself in its entirety. The decision and order of the RACD dated December 7, 1988, states that counsel for the landlord "filed a motion requesting that her petition be withdrawn" on July 8, 1988, a week before the RHC issued its decision and order in the landlord's appeal. Accordingly, the December 7 order stated that "Hardship Petition # 20,100"—not merely the appeal in HP 20,-100, which by then was over—"is DISMISSED WITHOUT PREJUDICE." [8]

■■■ Because the landlord withdrew HP 20,100 but then increased the tenants' rent as if the seventeen percent increase it had obtained in HP 20,100 remained valid, the rent ceiling under HP 20,382 must be determined anew. If an initial rent increase is improper (or is rescinded or nullified) and a later increase builds upon the first, the amount of the second increase must be recalculated. *Guerra v. District of Columbia Rental Housing Commission,* 501 A.2d 786, 791 (D.C. 1985); *see Kitchings v. District of Columbia Rental Housing Commission,* 588 A.2d 263, 264 (D.C.1991). We remand this case to the RHC for such recalculation, reflecting the fact that after the landlord withdrew HP 20,100, it was no longer entitled to the seventeen percent increase granted in that proceeding.

### III

The tenants also challenge the rent ceiling increase granted in HP 20,382, arguing that the landlord does not deserve or need a rent increase for interest expenses because the landlord has paid off the mortgage for the building and no longer has any interest expense to worry about. The tenants maintain that the statute and regulations by which hardship increases are calculated are flawed because they base future rent increases on the prior year's expenses. They suggest that the better practice would be to use a prospective approach for calculating hardship petition rent increases.

"It is a basic rule of statutory construction that courts must follow the plain and ordinary meaning of a statute because that is the meaning intended by the legislature." *Guerra, supra,* 501 A.2d at 789 (citations omitted). Here the language of the statute clearly mandates a retrospective approach, not a prospective one. D.C.Code § 45–2522(a) (1990) states that "the Rent Administrator *shall,* after review of the figures and computations set forth in the [landlord's] petition, allow additional increases in rent which would generate no more than a 12% rate of return computed according to subsection (b) of this section" (emphasis added). Under subsection (b), the net income is "computed over a base period of the 12 consecutive months within 15 months preceding the filing of a petition...." D.C.Code § 45–2522(b); *see* 14 DCMR § 4209.10(b) (1991) (to the same effect). One element in the calculation of net income is interest payments. D.C.Code § 45–2522(b)(1)(G). The RHC, in its decision and order, concluded that the reporting period used by the landlord was in full compliance with the statute and regulation and that it had submitted evidence which supported the hearing examiner's finding that the mortgage interest payments in that period totaled $7,191.82.

■■■ We find no error in this aspect of the RHC's decision. The method for calculating hardship rent ceiling increases is dictated by statute, and the RHC in this case was not free to adopt a different method. The statute may or may not need to be revised, but any decision to revise it is solely within the domain of the legislature, not the RHC or the courts. Without a statutory change, the regulation cannot be changed either, at least not in a way that would be inconsistent with the statute as it now exists.

### IV

We affirm the RHC's decision to follow the statutory formula in determining the amount of the increase to be allowed to the landlord, but we reverse the portion of its order in which it calculated that amount. We remand

---

8. The record shows that the landlord knew the difference between withdrawing a hardship petition and withdrawing an appeal from an administrative decision and order. On June 24, 1988, the landlord moved to withdraw its *appeal* in HP 20,382; that motion was granted on July 5, 1988.

the case for a recalculation of the proper increase without taking into account the previous increase granted in HP 20,100, which is now null and void.

*Affirmed in part, reversed in part, and remanded.*